**Maryann H. HIDLE, Plaintiff,**

v.

**GENEVA COUNTY BOARD OF EDUCATION, Defendant.**

Civ. A. No. 83–T–489–S.

United States District Court,
M.D. Alabama, S.D.

March 3, 1988.

Coleman D. Hamm, Jr., Amari & Hamm, Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff.

Donald B. Sweeney, Jr., Rives & Peterson, Birmingham, Ala., Joseph P. Hughes, Hughes & Danner, Geneva, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, premised on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e through 2000e–17, plaintiff Maryann H. Hidle successfully challenged the refusal of defendant Geneva County Board of Education to hire her as an assistant principal because of her sex. This cause is now before the court on Hidle's motion for attorney fees and costs. For the reasons that follow, the court has concluded that the motion should be granted, and that Hidle is entitled to $169,539.50 for attorney fees and $1,916.89 for expenses.

## I. Background

This case was tried before another judge, who found that the board of education for the Geneva County, Alabama school system violated Title VII by refusing to hire Hidle as an assistant principal because of her sex. The court did not award back-pay, but did order the school board to offer Hidle the next vacant assistant principalship. Hidle then filed a motion to alter and amend judgment, questioning the court's failure to award her backpay and to instate her immediately into the job she was wrongly denied. The court not only denied Hidle's motion, it set aside its earlier finding of discrimination, and entered judgment in favor of the school board. Hidle appealed.

The Eleventh Circuit Court of Appeals reversed the judgment of this court and remanded the case "with instructions to reinstate the judgment for plaintiff as originally granted and to grant plaintiff the relief requested in her motion to alter or amend, namely: 'restore her to the position she would have occupied in the absence of the violation of Title VII, pay her backpay with interest and enjoin further violation of Title VII by the defendant.'" *Hidle v. Geneva County Board of Education,* 792 F.2d 1098, 1100 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987). After remand, the case was reassigned to this judge, and the court carried out the appellate court's instructions.

## II. Attorney Fees

■ The attorney fee provision of Title VII, 42 U.S.C.A. § 2000e–5(k), authorizes courts to award reasonable fees to prevailing civil rights litigants. Hidle is unquestionably the prevailing litigant in this lawsuit and is thus entitled to reasonable attorney fees.

The court will determine what constitutes a reasonable fee in accordance with the 12 factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The number of hours reasonably expended to prosecute the lawsuit and the prevailing market rate provide an important starting point for any fee determination. *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). In making its fee award, the court will therefore start by determining: (a) the number of hours reasonably devoted to this litigation; and (b) the prevailing market rate for non-contingent work performed by similarly situated attorneys in similar cases in the community. The product of these two figures will provide the court with a "lodestar" figure. The court will then determine whether any portion of this lodestar fee should be adjusted upwards or downwards. *Id.* at 434, 103 S.Ct. at 1040.

### A. Reasonable Hours

■ Hidle was represented by Coleman D. Hamm, Robert L. Wiggins, Jr., and Ann K. Norton. Wiggins claims 545.45 hours, Hamm claims 135.9 hours,[1] and Norton claims 58.10 hours.

The court has considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed.[2] While sex dis-

---

1. Hamm's affidavit and itemization show 135.9 hours; Wiggins's affidavit, however, shows Hamm's total hours as 180.35. Because the only hours itemized are the 135.9 hours, these are the only hours the court can review for reasonableness.

2. The initial calculation of reasonable hours at the prevailing market rate will often subsume many of the other *Johnson* factors. *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

crimination litigation is in general no longer novel, this case was difficult to try because it required a sophisticated understanding and presentation of complex principles of law and a substantial amount of evidence. Moreover, the issues that arose after this court set aside its original finding of discrimination were novel; as the court of appeals noted, this was "an unusual if not unique case," *Hidle*, 792 F.2d at 1099. In spite of these substantial obstacles, Hidle's lawyers obtained completely successful results; Hidle was awarded backpay and instated into an assistant principalship. Moreover, although this was not a class action, the results obtained by Hidle's attorneys should discourage employment discrimination in the Geneva County School System, if not in a broader area, in the future. *City of Riverside v. Rivera*, 477 U.S. 561, 577–79, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (attorney fee award in civil rights case should reflect not only specific individual relief obtained but also any broad social benefit that may indirectly result from litigation). Based on the two *Johnson* factors of novelty and results obtained, the court finds that, as a general matter, the claimed hours are reasonable.

The court's conclusion that the hours are reasonable is also supported by its examination of the time sheets listing the hours claimed by each of the attorneys. There does not appear to be any unnecessary duplication of efforts among the attorneys, and all of the hours listed appear to be directly related to this particular litigation. Furthermore, Wiggins, who entered and took primary responsibility of the case shortly after it was filed, stated in his affidavit that the hours needed for him to familiarize himself with the case in ways that would not have been needed if Hamm had remained primarily responsible were deleted from the fee request. The attorneys have exercised reasonable 'billing judgment.' The court therefore finds the following hours to be reasonable and compensable:

| | |
|---|---|
| Wiggins | 545.45 |
| Hamm | 135.90 |
| Norton | 58.10 |

**B.   Prevailing Market Rate**

■   To determine the prevailing market rate the court will consider the following *Johnson* factors: customary fee; skill required to perform the legal services properly; the experience, reputation and ability of the attorney; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

*Customary Fee.* Hidle contends that the customary fee for attorneys of similar experience in the community supports an hourly non-contingent fee of $135 for Wiggins, $90 for Hamm, and $80 for Norton. The evidence shows that, in the Alabama, attorneys with approximately the same experience as Wiggins charge a non-contingent fee ranging between $90 and $200 an hour; attorneys with approximately the same experience as Hamm, $95 an hour; and attorneys with approximately the same experience as Norton, $75 an hour.

*Skill Required to Perform the Legal Services Properly.* The work product of Hidle's attorneys demonstrates a high degree of skill in complex civil rights litigation.

*Experience, Reputation, and Ability of the Attorneys.* Wiggins has been practicing for over 13 years. He enjoys a well deserved reputation for civil rights advocacy of the highest order. Hamm has been practicing for over seven years, and Norton has been practicing for over one year. While neither of them has an extensive civil rights background, they enjoy a good reputation in the legal community, and they both exhibited a high degree of skill and ability in this litigation.

*Time Limitations.* This factor requires "some premium" where there has been "[p]riority work that delays the lawyer's other legal work." *Johnson*, 488 F.2d at 718. There is no evidence of such limitations here.

*Preclusion of Other Employment.* This factor "involves the dual consideration of otherwise available business which is fore-

closed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. There is no substantial evidence of this.

*Undesirability of the Case.* In general, civil rights litigation, such as this, is seen as undesirable because it stigmatizes an attorney as a "civil rights lawyer" and thus tends to deter fee-paying clients from seeking assistance from that lawyer. *See York v. Alabama State Board of Education,* 631 F.Supp. 78, 85 (M.D.Ala.1986). This particular case was especially undesirable in light of the hostility some members of the community took toward Hidle's position. This hostility is evidenced by, among other things, the petition for further relief filed by ten sets of parents of school children from the Hartford Middle School, demanding that their children not be taught by Hidle, whose responsibilities as an assistant principal include teaching.

*Nature and Length of Relationship with Client.* Hamm has represented Hidle since the litigation began in 1983; Wiggins has represented her in this case since February 1984; and Norton has represented her in this case since August 1986. None of the lawyers has a prior professional relationship with Hidle.

*Awards in Similar Cases.* This court has awarded non-contingent fees in the range of $75–150 an hour in other civil rights cases. *See, e.g., Georgia Association of Realtors v. Alabama Real Estate Commission,* 678 F.Supp. 854 (M.D.Ala. 1987); *Birl v. Wallis,* 649 F.Supp. 868 (M.D.Ala.1986); *York v. Alabama State Board of Education, supra.*

Based on these criteria, the court is of the opinion that the following hourly fees for Hidle's counsel reasonably reflect the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases:

Wiggins ............................... $125/hour
Hamm ............................... 90/hour
Norton ............................... 75/hour

In setting the appropriate market rate, the court has compensated for delay in payment by basing the award on current rates. A court may recognize the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. *Johnson v. University College of University of Alabama in Birmingham,* 706 F.2d 1205, 1210–11 (11th Cir.1983).

### C. Lodestar Calculation

The unadjusted lodestar figure for each attorney consists of the product of the attorney's compensable hours times his or her prevailing market fee. The lodestar figure for each of the attorneys is as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Wiggins | 545.45 | $125 | $68,181.25 |
| Hamm | 135.90 | 90 | 12,231.00 |
| Norton | 58.10 | 75 | 4,357.50 |

### D. Adjustment

Hidle's attorneys seek at a minimum a 100% upward adjustment of the lodestar figure, and they argue that a 150% to 300% upward adjustment would be more appropriate. For the reasons stated below, the court concludes that an upward adjustment of 100% is warranted in this case.

Eleven of the twelve *Johnson* factors were examined in the above discussion of reasonable hours and reasonable fees. Factor six, whether the fee is fixed or contingent, was not examined. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a majority of the United States Supreme Court held that attorney fees may be enhanced due to contingency of payment. *See* —— U.S. at ——, 107 S.Ct. at 3089 (O'Connor, J., concurring); —— U.S. at ——, 107 S.Ct. at 3091 (Blackmun, J., with whom Brennan, Marshall and Stevens, JJ., join, dissenting). There, the district court had enhanced a fee award focusing on the novelty and risk of the litigation. A four-person plurality reversed, holding that enhancement based on risk was appropriate in only "exceptional cases." *Id.* at ——, 107 S.Ct. at 3088 (White, J., plurality opinion). Justice

O'Connor provided the critical fifth vote for the judgment of the Court, agreeing with the plurality that a fee was inappropriate in the case before the Court, but agreeing with the dissenters that a fee enhancement is not inappropriate generally. Because she was more restrictive than the dissenters in her approach as to when enhancement is appropriate, one should look primarily to her opinion to determine when a fee should be enhanced. *Catlett v. Missouri Highway and Transportation Commission,* 828 F.2d 1260, 1271 (8th Cir.1987); *Crumbaker v. Merit Systems Protection Board,* 827 F.2d 761 (Fed.Cir.1987); *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 53 (D.C.Cir.1987).

Justice O'Connor wrote that "compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class,* rather than on an assessment of the 'riskiness' of any particular case." —— U.S. at ——, 107 S.Ct. at 3089 (emphasis in original). She further stated that certain circumstances had to exist before a fee enhancement was appropriate. *Id.* at ——, 107 S.Ct. at 3090–91. Specifically, it is the fee applicant's burden to prove the degree to which the relevant market compensates for contingency. *Id.* at ——, 107 S.Ct. at 3090. Also, "a court may not enhance a fee award any more than is necessary to bring the fee within the range that would attract competent counsel," and no enhancement is appropriate unless without it "the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at ——, 107 S.Ct. at 3091.

The circumstances necessary for a fee enhancement exist in this case. First of all, Hidle's attorneys took this case on a contingency fee basis because Hidle was unable to pay their fees and expenses. Secondly, lawyers in Alabama are definitely compensated for taking cases on a contingency basis.[3] The market principle in this state is that lawyers who are to be compensated only in the event of victory expect and "are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) (en banc). Thirdly, lawyers in Alabama who take cases on a contingency basis are very highly compensated for taking the risk that they will be paid only in the event of success. They expect to receive anywhere from 1.5 to 8 times the traditional hourly rate for non-contingency work, and it is not uncommon for fees in a successful contingency case to exceed $500 an hour.

Most of the cases in which lawyers agree to contingency arrangements involve personal injury and debt collection. Very few lawyers in Alabama are, however, willing to undertake such arrangements in employment discrimination cases. This difference is for the most part due to the availability of substantial fee enhancement with the former cases, and the lack of such with the latter cases. The evidence before the court convincingly reflects that attorneys in the state are unwilling to undertake employment discrimination cases on a contingency basis because, in large part, they believe the cases are uneconomical; the fees they receive when successful are not high enough to justify taking the risk of losing such case, especially since there is plenty of other, more profitable work available. In fact, a substantial percentage of the lawyers that handled contingency-fee employment discrimination cases in the past have stopped doing so for this reason, and, as a result, there is a severe and critical shortage of civil rights lawyers—and more specifically, plaintiff's employment discrimination lawyers—in this state. It is therefore very difficult, and becoming increasingly more difficult, for those who are alleged victims of employment discrimination and who cannot afford to pay the costs and fees of litigation, to get a lawyer.

---

3. Hidle's lawyers are from Birmingham. Because there are few Alabama lawyers willing to do contingency-based employment discrimination work, *see* discussion *infra,* it was not unusual for her to use lawyers that were not from the Geneva County area. Moreover, because there are only 25 to 30 civil rights lawyers in all of Alabama and all of them take cases throughout the entire state, the relevant market in this case is the State of Alabama.

The evidence before the court further convincingly reflects that only if attorneys who undertake such work are compensated, as are typical contingency fee attorneys, at a level that reflects the inherent risk of the contingency arrangement, will a sufficient number of competent counsel be attracted to represent alleged victims of employment discrimination who cannot afford to pay attorney fees. *See e.g., Jones v. Central Soya Company, Inc.,* 748 F.2d 586, 593 (11th Cir.1984); *Yates v. Mobile Home County Personnel Board,* 719 F.2d 1530, 1534 (11th Cir.1983). Or, to put it another way, Alabama citizens who believe they are victims of discrimination would face substantial, and often insurmountable, obstacles in finding counsel absent the likelihood of fee enhancement for contingency. Indeed, the evidence here reflects that Hidle herself faced such substantial difficulty. "This is simply the law of supply and demand," and "lawyers who take cases on contingent bases [must be] properly compensated for the risks inherent in such cases." *Pennsylvania,* —— U.S. at ——, 107 S.Ct. at 3094 & 3101 (Blackmun, J., with whom Brennan, Marshall and Stevens, JJ., join dissenting). *See also id.* at ——, 107 S.Ct. at 3089 (O'Connor, J., concurring). Enhancement of the fees here is therefore not only appropriate but necessary.

■■■ The final question is how much enhancement is necessary. To place Hidle's attorneys in a position comparable to that of those Alabama attorneys who have been most successful, it arguably would be appropriate to pay them as much as $500 per hour, an enhancement of, from 400% for Wiggins to 667% for Norton. However, " 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'" *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984), *quoting* S.Rep. No. 94–1011, p. 6 (1976). The enhancement should there-

fore be no more than necessary to bring the fee "within the range" that would attract competent counsel. *Pennsylvania,* —— U.S. at ——, 107 S.Ct. at 3091 (O'Connor, J., concurring). Based on all of the above, the court finds that the fee enhancement necessary to meet this bottom-end requirement for employment discrimination cases in Alabama is 100%.[4] With this 100% adjustment, the attorney fees here are as follows:

| Attorney | Total |
| --- | --- |
| Wiggins | $136,362.50 |
| Hamm | 24,462.00 |
| Norton | 8,715.00 |
| Total Fees: | $169,539.50 |

### III. Expenses

In addition to fees, Hidle's attorneys seek an award of $1,916.89 for expenses. This sum includes expenses for paralegals, travel, photocopying, long distance telephone calls, and postage. All of the expenses claimed appear to be reasonable and necessary. Accordingly, the court concludes that Hidle's attorneys may recover the full amount of the expenses they claim. *See generally Dowdell v. City of Apopka,* 698 F.2d 1181, 1188–92 (11th Cir.1983).

### IV. Conclusion

The court believes that a few additional comments are appropriate here. At issue here is much more than the simple question of how much Hidle's attorneys should receive as attorney fees. At issue is Alabama's continued full and vigorous commitment to this Nation's lofty, but as yet unfulfilled, agenda to make the promises of this land available to all citizens, without regard to race or sex or other impermissible characteristic. There are at least two ways to undermine this commitment. The first is open and direct: a repeal of this Nation's anti-discrimination laws. The second is more indirect and, for this reason, somewhat insidious: to deny victims of discrimination a means for redress by creat-

---

**4.** Because the court has used the entire state as the relevant market, *see* note 3, *supra,* it has used an enhancement sufficient to ensure that competent counsel from somewhere in the state will be attracted to the type of case at issue here. If the appropriate market were only the Birmingham area or only the Montgomery area the enhancement might have to be greater because the pool of lawyers competent to do employment discrimination work would be much smaller.

ing an economic market in which attorneys cannot afford to represent them and take their cases to court. It appears from the undisputed evidence here that Alabama squarely falls within the latter scenario; the state's already too small pool of attorneys willing to take civil rights cases is growing even smaller. The court therefore hopes that with the relief it affords today this trend will not only be halted, it will be dramatically reversed; the court sees its relief as not an isolated measure, but rather as a broad recommitment of Alabama's legal resources to the full and vigorous pursuit of civil rights.

An appropriate order will be entered.

## ORDER

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Maryann H. Hidle's motion for attorney fees and expenses, filed on July 16, 1984, and renewed on November 22, 1987, be and is hereby granted; and that plaintiff Hidle have and recover from defendant Geneva County Board of Education the sum of $169,539.50 for attorney fees and $1,916.89 for expenses.