Alice RICHARDSON, Plaintiff–Appellee,

v.

**ALABAMA STATE BOARD OF EDUCATION, et al.,
Defendants,**

**Lamar County Board of Education; L.C. Steedley, individually and in his capacity as Superintendent of the Lamar County Board of Education; Charles L. Cook; Dennis Knight; Dale McNeeds; Jerry Minor and Ricky Perkins, Defendants–Appellants.**

Alice RICHARDSON, Plaintiff–Appellee,

v.

**ALABAMA STATE BOARD OF EDUCATION, et al.,
Defendants,**

**Lamar County Board of Education; L.C. Steedley, individually and in his capacity as Superintendent of the Lamar County Board of Education; Charles L. Cook; Dennis Knight, et al., Defendants–Appellants.**

Nos. 90–7002, 90–7336.

United States Court of Appeals,
Eleventh Circuit.

July 17, 1991.

---

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Alice Richardson, a black school teacher, brought a Title VII action against her employer, the Board of Education of Lamar County, Alabama. After a bench trial the district court ruled in her favor, and the County Board appeals. The County Board argues that appellee's suit was precluded by a previous consent decree and also challenges the district court's adjudication of the Title VII claim and remedies. We affirm.

## BACKGROUND

In 1983 the County Board hired Richardson to teach reading at the fifth and sixth grade level at Millport Elementary School. Although she had been certified and had taught in Mississippi, she had not passed the Alabama Initial Teacher Certification Test, as is required by Alabama law in order to secure permanent certification. The County Board, after approval by the State Department of Education, issued her a temporary certificate for the 1983–84 school year to allow her to teach and to take the certification test. Richardson twice failed the test in 1984. The County Board, with the state's permission, granted her another temporary certificate for the 1984–85 school year, but she failed the test twice more that year.[1] In October 1985, the state approved another one-year temporary certificate for Richardson, but deduct-

---

1. The certification test had two components, a Basic Professional Studies test and a field test in a particular subject area. Richardson passed the Basic test in March 1985, but did not pass the two types of field tests she took: the Early Childhood Education test and the Elementary Education test. She failed the Early Childhood Education test twice in 1984 and failed the Elementary Education test twice during the 1984–85 school year and once in March 1986.

ed $500 from its annual allotment to Lamar County pursuant to its regulations. The County Board deducted the $500 from Richardson's salary, and she taught for the 1985–86 school year.

Meanwhile the certification test was being challenged as racially discriminatory in violation of Title VII. 42 U.S.C. § 2000e *et seq.* A class action brought in 1981 alleged that the test, created and administered by the State Board of Education for all state public schools, had an adverse impact upon black teachers. *Allen v. Alabama State Bd. of Educ.*, 636 F.Supp. 64 (M.D.Ala. 1986). The plaintiff class consisted of "all black persons who have been or will be denied any level teacher certification because they failed to pass the tests administered under the program" of the State Board. *Allen v. Alabama State Bd. of Educ.*, 612 F.Supp. 1046, 1048 (M.D.Ala. 1985). The plaintiff class included Richardson. On July 3, 1985, after negotiations between the parties, the district court granted plaintiffs' motion to conditionally enforce an agreement to settle the litigation with the State Board. *Id.* On October 25, 1985, two days after Richardson received approval for her third temporary certificate to teach, the district judge approved the consent decree. It provided for: 1) a permanent injunction against the State Board preventing use of any teacher certification exam that has a disparate impact on black teacher candidates, 2) guidelines for future teaching certification tests, 3) certification within ninety days of certain teachers who were denied certification based on failure of the written test, but who had scored within an assigned point range, 4) $500,000 in compensatory damages, $5,000 of which was designated for four named plaintiffs and the rest divided pro rata among remaining plaintiffs, 5) attorneys fees, and 6) retention of jurisdiction "to monitor and enforce the defendants' compliance with the terms of this Decree to the extent necessary."[2] It is undisputed that Richardson was entitled to certification under the terms of the consent decree. *See* consent decree, para. 11. She

eventually received her pro rata share of the damages and was certified in July 1987, but not before two intervening events occurred.

First, in February 1986, the district judge granted the State Board's motion for rehearing, ruled that the consent decree could not be enforced due to federalism concerns, and certified the case for immediate appeal. *Allen v. Alabama State Bd. of Educ.*, 636 F.Supp. 64 (M.D.Ala.1986). The district court also proceeded with a trial beginning in May 1986. Second, on May 12 the County Board decided not to renew Richardson's teaching contract for the next school year. The stated reasons were that she did not have an Alabama teaching certificate and that the consolidation of Millport and Kennedy Schools to form a new school, South Lamar High School, combined with budget constraints required the termination of fifteen teaching positions. In June 1986 Richardson filed a complaint with the EEOC.

The litigation against the State Board was finally concluded in April 1987 when the Eleventh Circuit reversed the district court's order in the testing litigation and ordered reenforcement of the consent decree. *Allen v. Alabama State Bd. of Educ.*, 816 F.2d 575 (11th Cir.1987), *reh'g denied*, 817 F.2d 761. The trial court enforced the consent decree on May 14, 1987. Richardson filed this suit against the County Board, its members and the schools superintendent on June 17, 1987, alleging that her dismissal based on the test was discriminatory and a violation of Title VII. The district court found Richardson was entitled to prevail on a disparate impact theory and it ordered back pay and benefits, attorneys fees, and reemployment as a teacher in the County. 729 F.Supp. 806. The County Board appeals on several grounds.

## PRECLUSION

■ The County Board argues the district court erred by even addressing the

2. The consent decree stated that the defendants did not admit and expressly denied that they

had violated the Constitution or a federal statute.

merits of Richardson's claim under Title VII.[3] It contends her claim duplicates the Title VII litigation resolved in the *Allen* consent decree, which was drafted in 1985 and finally enforced in 1987. The County Board claims that the consent decree precludes further litigation on the discriminatory effect of the tests under both res judicata (claim preclusion) and collateral estoppel (issue preclusion). The district court held that neither barred Richardson's suit. The district court's conclusions regarding res judicata and collateral estoppel are questions of law to be reviewed de novo. *See N.A.A.C.P. v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990). The factual determinations underlying these conclusions, however, are accepted on review unless clearly erroneous. *See Riddle v. Cerro Wire and Cable Group, Inc.,* 902 F.2d 918, 922 (11th Cir.1990); *Jaffree v. Wallace,* 837 F.2d 1461, 1468 (11th Cir.1988); *Hann v. Carson,* 462 F.Supp. 854, 860–61 (M.D.Fla. 1978).

■■■ The doctrine of res judicata, or claim preclusion, forecloses relitigation of matters actually or potentially litigated in an earlier lawsuit. *See S.E.L. Maduro, Inc. v. M/V Antonio de Gastaneta,* 833 F.2d 1477, 1481 (11th Cir.1987). The doctrine applies only if four elements are present: 1) there is a final judgment on the merits of the first action, 2) the first decision is rendered by a court of competent jurisdiction, 3) the parties to both actions, or those in privity with them, are identical, and 4) the causes of action in both suits are identical. *Id.; Hart v. Yamaha–Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir.1986). We specifically have held that res judicata applies to Title VII consent decrees. *See In re Birmingham Reverse Discrimination Employment Litigation,* 833 F.2d 1492, 1498 (11th Cir.1987), *aff'd*

*sub nom. Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *United States v. Jefferson County,* 720 F.2d 1511, 1517 (11th Cir.1983), *reh'g denied,* 724 F.2d 978 (1984); *see also Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.,* 575 F.2d 530, 538 (5th Cir.1978) (consent decree is a judicial determination accorded finality under rules of claim preclusion).[4] In *Jefferson County* and *In re Birmingham, supra,* plaintiffs who were not parties to the first action sought to bring discrimination claims against the same defendant, who asserted preclusion based on the consent decree. This case is the inverse situation: the same plaintiff has brought discrimination claims against a different defendant, who seeks to use a previous consent decree as a shield.

The *Allen* defendants were the Alabama State Board of Education and state officials. The Lamar County Board was not named. The *Allen* consent decree does not direct any of its extensively detailed remedies at Lamar County or any other county. The defendants in the present case were the Lamar County Board of Education, its members and its schools superintendent.[5]

We agree with the district court's decision that the class action suit does not bar this litigation because the plaintiff seeks redress for different harm in the present action, although it is related to the previous suit and both suits were brought under Title VII. Thus, the causes of action are not identical. The *Allen* decree dealt with the flaws in the testing process, and as one of the remedies Richardson was entitled to certification within ninety days and her share of damages from the state. As of that moment in October 1985, enforcement of the *Allen* decree would have encompassed her Title VII claims based on the certification test's impact. But a new situ-

---

**3.** Richardson also brought claims under §§ 1981 and 1983 and the fourteenth amendment, but the district court did not address these claims, and they were not appealed.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** The second suit also initially named the State Board. After the State Board filed a motion to dismiss based on res judicata and collateral estoppel, the district court dismissed it from the case because Richardson was seeking no relief from the State Board.

ation arose. The consent decree was collaterally attacked and Richardson did not receive her certification. Then the County did not renew her contract. While the consent decree appeal was pending, the County went through with its consolidation of two elementary schools and eliminated fifteen teaching positions, including Richardson's.[6] One of the stated reasons for not renewing Richardson's contract was her lack of a teaching certificate. The legality of the certification test at the time Richardson's contract was not renewed was at least uncertain. It had been invalidated by consent decree, but the decree's enforcement had been challenged and appealed.[7] The employment decision by the County to deny Richardson a teaching job based upon a challenged testing process was independent of any action of the State Board or the past impact of the test upon certification. This is evidenced by the fact that Richardson's present suit seeks reinstatement from the County and back pay for the 1986–90 school years, remedies not needed in the 1985 *Allen* decree, which ordered certification within ninety days for those teachers who had scored within a certain point range. The *Allen* decree does not preclude actions against the County Board because the decree never anticipated that further relief would be required to correct the discriminatory impact of the test. By using the test as a reason for not renewing Richardson's contract after the consent decree had been invalidated, or at least rendered legally questionable, the County Board trod on new ground and left itself open to new claims under Title VII. As appellee points out in her brief:

> When the consent decree was framed, the *Allen* parties were, as Appellant notes, aware that some teachers might *in the past* have lost teaching positions for lack of certification, and that some teachers who were not entitled to certifi-

cation under the terms of the decree might eventually lose their teaching jobs. See App.Br. 50. This does not mean, however, that the *Allen* parties contemplated that teachers who were entitled to immediate permanent certification under the terms of the decree would lose *their* jobs, or that the decree is intended to preclude such teachers from recovering for their loss of employment.

Appellee brief at 26 n. 18 [emphases original].

 Although collateral estoppel, or issue preclusion, and res judicata are distinct, a similar analysis applies when considering the preclusive effect of a consent decree. Collateral estoppel traditionally requires that the issue in the second suit be: 1) identical to an issue in the former action, 2) actually litigated and determined by the parties, and 3) necessarily so determined. *Barber v. International Brotherhood of Boilermakers*, 778 F.2d 750, 757 (11th Cir. 1985) (citing *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)); *Hart*, 787 F.2d at 1473. As we pointed out in *Barber*, "[t]he nature of consent decrees forces a twist in this traditional analysis" because the second requirement, actual litigation, is always missing when cases are settled. *Id.* The proper analysis, as outlined in *Barber* and its predecessor *Kaspar Wire Works*, 575 F.2d at 539, is whether the parties specifically agreed to preclude a given issue in the consent decree. "The central inquiry in determining the preclusive effect of a consent decree is the intention of the parties as manifested in the decree or otherwise." *Barber*, 778 F.2d at 757. Intent may be inferred from the words of the agreement or the record. *Id.*

6. Three teachers were subsequently rehired. R3–49.

7. After the district court initially approved the consent decree, the state superintendent sent a letter dated December 5, 1985 to all city and county superintendents notifying them of the consent decree and the resulting changes in the December testing process. The letter also stated: "In view of an impending appeal of this order, there might be further changes regarding the test candidacy status of examinees." *See* plaintiff's trial ex. 8. Ultimately, the state's testing process was invalidated when this court ordered reenforcement of the 1985 consent decree.

■ As we have noted, the second suit addressed the County Board's non-renewal rather than merely the State Board's testing process, which makes it a distinguishable claim even when brought under the same statute. Issues precluded by consent decree are limited to those reasonably foreseen at the time of the agreement, which did not include the delay in Richardson's certification and subsequent release from her job. *See Barber*, 778 F.2d at 758 (quoting Comment, The Consent Judgment as an Instrument of Compromise and Settlement, 72 Harv.L.Rev. 1314, 1320–21 (1959)); *Jackson v. DeSoto Parish School Bd.*, 585 F.2d 726, 729 (5th Cir.1978); Rutherglen, *Notice, Scope, and Preclusion in Title VII Class Actions*, 69 Va.L.Rev. 11, 77–78 (1983).

### TITLE VII

The district court ruled that Richardson was entitled to prevail under Title VII based on the disparate impact of the certification test, but it ruled that she could not recover under a theory of disparate treatment because no intentional discrimination by the county was proven. The district court found that the certification test had an adverse impact and that Richardson was released because of her failure to pass it. On appeal, various aspects of the district court's adjudication of the Title VII claims are challenged.

One of the County Board's defenses in the district court was preclusion, previously discussed. It also raised two Title VII defenses at trial: 1) that the County Board had no choice but to release Richardson because she had not been certified under state regulations, and 2) that even if she had been certified, nondiscriminatory rea-

sons, namely the consolidation of two elementary schools, accounted for not renewing her contract. The Board argues only the first of these defenses in its brief before this court. The Board did not defend the validity of the certification test itself, in fact, it conceded at trial that plaintiff need not relitigate the issue of test validity at issue in *Allen*. R3–10. Because the Board did not contest the validity of the test itself, any defense had to be based on justifying the decision not to renew Richardson's contract because of her performance on the test or reasons unrelated to the test.

■ The Board first argues that it had no choice but to release Richardson because she had not been certified and Alabama law would not allow the county to employ an uncertified teacher. The Alabama Code provides that no teacher may be employed in the public schools unless the teacher holds a certificate issued by the state superintendent of education. *See* Ala.Code § 16–23–1 (1975 & 1990 Supp.).

Given that the state's certification had been invalidated and was on appeal, that the state board had the power to fashion new regulations, and that the County Board had successfully petitioned the state for three separate temporary certificates, we cannot accept the defense that the County Board was forced to dismiss Richardson under Alabama law.[8] In fact, the *Allen* litigation was a reason that the County Board petitioned for Richardson's temporary certificate to teach for the 1985–86 year.[9] Even if the factual basis for a Title VII defense based on Alabama law were established, it is not clear such a claim is available. *See International Union et al. v. Johnson Controls*, —— U.S. ——, 111 S.Ct. 1196, 1209, 113 L.Ed.2d 158

---

8. The state board is charged with making the regulations governing the issuance, extension and renewal of certification. *See* Ala.Code § 16–23–2. The state superintendent has the power to grant one-year provisional certificates. *Id.* § 16–23–3. Although the statute states that a provisional certificate shall not be extended or renewed, a temporary or provisional certificate may be issued in consecutive years with the approval of the state superintendent. *See Steele v. Matthews*, 253 Ala. 255, 44 So.2d 1 (1949) (six one-year provisional certificates).

9. The county superintendent's September 16, 1985 letter to the state authorities stated: "Mrs. Richardson has done a creditable job in the classroom. In view of this and the recent litigation surrounding black teachers and the Teacher Competency Test, I feel that this third temporary certificate would be warranted." R1–20–4 (chronology accompanying affidavit of Edith Miller of Alabama Dept. of Education).

(1991) (potential liability under state tort law not a Title VII defense) ("When it is impossible for an employer to comply with both state and federal requirements, this Court has ruled that federal law pre-empts that of the States.").[10]

The Board does not explicitly argue on appeal its second Title VII defense asserted below: that Richardson would not have been hired even if certified. The district court stated that "the Lamar County Board of Education has not convinced the court that it would have declined to reemploy Richardson even if she had possessed a permanent teaching certificate." 729 F.Supp. at 813 n. 18.

The court found that the superintendent had admitted in a deposition that the test was the reason for Richardson's release, which is supported in the record and was also the position that was the basis of the Board's alternate defense on the merits. The court chose to credit these sources, rather than the superintendent's opposite testimony at trial that Richardson would *not* have been rehired even if she had passed the certification test. There was evidence that six teachers in the county school system who had passed the test and had as much or less experience than Richardson were hired for the 1986–87 school year. The appellant, by failing to argue the point on appeal, has properly recognized that the court's finding was not clearly erroneous.

■ Certain additional Title VII defenses were presented on appeal only by amici curiae The Washington Legal Foundation, The Lincoln Institute for Research and Education, and the Allied Educational Foundation: 1) the finding of adverse impact was clearly erroneous, 2) the district court misstated the law on burdens of proof, 3) the court's analysis regarding the job relatedness of the teacher certification test was

flawed, and 4) the court incorrectly placed the burden of proof on appellants to show that even without certification the County Board would not have renewed Richardson's contract. The Board briefed only preclusion and its defense based on Alabama law, discussed *supra*, and the venue and remedies issues, discussed *infra*. In the absence of exceptional circumstances, amici curiae may not expand the scope of an appeal to implicate issues not presented by the parties to the district court. *See McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 1485 n. 10, 113 L.Ed.2d 517 (1991) (Marshall, J., dissenting); *Wiggins Bros., Inc. v. Dept. of Energy*, 667 F.2d 77, 83 (Temp.Emerg. Ct.App.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982); *United States v. Allegheny–Ludlum Indust.*, 517 F.2d 826, 840 n. 13 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 452 (5th Cir.1973); *Smith v. United States*, 343 F.2d 539, 541 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). Although this court granted amici's motion for leave to file a brief, the arguments raised only by amici may not be considered. This court has recently held that an appellate court will not consider issues not presented to the trial court, although briefs will be read liberally to ascertain the issues on appeal. *See McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1495 & n. 2 (11th Cir.1990) (en banc). We will not consider on appeal Title VII defenses that were neither raised in the district court nor argued by appellants on appeal.

### OTHER ISSUES

Appellants raise three more issues that we review for abuse of discretion.

■ First, appellants argue that the district court erred by not granting their

---

**10.** *See also* Schlei & Grossman, *Employment Discrimination Law 2d Edition*, at 1438 (1983) (good faith not a notably successful defense); *id.* at 535 (Five–Year Cumulative Supp.1989) ("Courts continue to struggle with the application of a good faith defense to back pay liability to employers who rely on state statutes."); *McCormick v. Attala County Bd. of Educ.*, 541

F.2d 1094, 1095 (5th Cir.1976) (lack of bad faith does not deprive Title VII plaintiff of relief); *but see Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 253 & n. 122, 254 & n. 125 (5th Cir.1974) (no back pay remedy when state statute mandates discriminatory practice), *reh'g denied*, 494 F.2d 1296.

motion to transfer the case from the Middle District of Alabama to the Northern District, where Lamar County and the parties and the alleged harm are located, under the federal venue statute. 28 U.S.C. § 1404(a). They claim that the Middle District was unrelated to the case except for the State Board defendant, which was eventually dismissed as a party. We review the district court's decision for abuse of discretion. *Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir.1982).

Appellee was entitled to file the suit initially in the Middle District. The Title VII venue provisions provide for filing "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed [or] in the judicial district in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e–5(f)(3). This means anywhere in the relevant state. *See Aitkin v. Harcourt Brace Jovanovich, Inc.*, 543 F.Supp. 987, 988 (W.D.N.Y.1982). Some federal courts have concluded that this broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances. *See Lewis v. Madison County Bd. of Educ.*, 678 F.Supp. 1550, 1551–52 (M.D.Ala.1988). A district judge, however, may transfer the case to another district where the suit could have been heard under section 1404(a). *Id.* at 1552. The section 1404(a) decision is based on the convenience of the parties and witnesses and "the interest of justice." 28 U.S.C. § 1404(a). Potential judicial efficiencies existed in the Middle District because appellants' primary claim was preclusion by virtue of the *Allen* litigation, which Judge Thompson, the trial judge in this case, had handled in the Middle District since its inception in 1981. In addition, the State Board, located in the Middle District, was initially a defendant until it was dismissed late in the case. We conclude, therefore, that the district court did not abuse its discretion by declining to grant appellants' transfer motion. *See England v. ITT Thompson Indust.*, 856 F.2d 1518, 1520 (11th Cir.1988); *In re*

*McDonnell–Douglas Corp.*, 647 F.2d 515, 517–18 (5th Cir. Unit A 1981).

■ Second, appellants challenge the sufficiency of the evidence to support the award of $2,456 in moving expenses as an element of back pay damages. However, the district court held a hearing on relief and attorneys fees and heard testimony from Richardson and her husband regarding her moving expenses after the County Board did not renew her teaching contract. Richardson moved several times since her release in 1986 and paid for a rental truck and other moving transport. The district court was in the best position to judge the credibility of the testimony, and we cannot say the court abused its discretion in calculating appellee's moving expenses.

■ Third, appellants challenge the award of attorneys fees. In its order, the district court awarded $37,380 in fees to five attorneys based on the usual "lodestar" figure of reasonable hours and rates plus adjustments. *See* order of May 3, 1990. Appellants challenge the 100% enhancement over "lodestar" for attorney Donald Watkins. A fees award may be increased by 100% to compensate attorneys for the risk of accepting a case on a contingency basis and to attract competent counsel. *See Lattimore v. Oman Construction*, 868 F.2d 437, 439 & n. 4, 440 (11th Cir.1989) (per curiam), *reh'g denied*, 875 F.2d 874; *Robinson v. Alabama State Dept. of Educ.*, 727 F.Supp. 1422, 1433 (M.D.Ala.1989), *aff'd*, 918 F.2d 183; *Stokes v. City of Montgomery*, 706 F.Supp. 811, 816–18 (M.D.Ala.1988), *aff'd*, 891 F.2d 905 (11th Cir.1989); *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 756 (M.D. Ala.1988). The County Board agreed at the hearing not to contest the findings of *Stokes* and *Hidle, supra,* which found that a 100% enhancement was appropriate for Alabama civil rights attorneys. Watkins was the only attorney who participated in the case on a purely contingency basis. Therefore, the district court did not abuse its discretion. Appellants' challenge of the award to Theron Stokes, who handled the fees hearing for appellee in the district court, is also without merit because the

hearing was part of the case. *See Jonas v. Stack,* 758 F.2d 567, 569 (11th Cir.1985).

For the foregoing reasons, the judgment of the district court and the award of equitable relief, damages and fees is

AFFIRMED.