March 25, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 MAR 25 A11: 10

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

NICHOLAS BABAUTA SANTOS,   )    APPEAL NO. 90-041
                    )    CIVIL ACTION NO. 90-369
    Plaintiff/Appellant,  )
                    )
       vs.           )    OPINION
                    )
ALVARO ARRIOLA SANTOS, et al.,)
                    )
    Defendants/Appellees.  )
_____)

Argued and Submitted March 27, 1991

Counsel for Plaintiff/Appellant:  Jay H. Sorensen
                                  P.O. Box 1184
                                  Saipan, MP 96950

Counsel for Defendants/Appellees:  James S. Sirok
(Enrique Agulto Santos and          P.O. Box 2145
Enrique Aguon Santos, Jr.)[1]     Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice; VILLAGOMEZ, Justice; and
       HILLBLOM, Special Judge.

DELA CRUZ, Chief Justice:

    Nicholas Babauta Santos ("Nicholas") appeals a Superior Court

order granting summary judgment in favor of defendants Alvaro A.

_____

    [1]The other defendants/appellees did not file a brief and did
not participate at oral argument. Defendant/appellee, Nicholas
Basa Santos filed a joinder in the brief filed by
defendants/appellees Enrique Agulto Santos and Enrique Aguon
Santos, Jr.

41

Santos and certain of the heirs of Nicholas Camacho Santos ("Santos") and Santos' sister, Eduvigis Camacho Santos ("Debis"). The trial court ruled that Nicholas does not have any right, title, or interest in Lot 013 B 01 ("Lot 01"), situated at San Roque, Saipan.

I.

A. Background

Nicholas' father, Vicente Agulto Santos ("Vicente"), deceased, was one of seven (7) children of Santos ("Santos"). Vicente had six siblings: Ramon Agulto Santos, Enrique Agulto Santos, Jose Agulto Santos, Consolacion Santos Ooka, Maria Agulto Santos, and Francisca Santos Mendiola. With the exception of Enrique and Jose, the defendants in this case are Santos' grandchildren or great-grandchildren.

Santos had a sister, Debis, who died intestate and without children on August 15, 1943. Debis owned Lot 01, which, upon her death descended to Santos, Debis' only surviving heir. Santos died intestate on September 27, 1968.

In 1942 or 1943, after Vicente got married, his father, Santos, gave him a parcel of land now referred to as Lot 010 B 06 ("Lot 06"), situated on Saipan.

Before Nicholas filed the present action (a) to set aside the order of distribution entered in Trust Territory High Court Probate Case Nos. 30 and 31; and (b) to obtain his father Vicente's proportionate share in the estates of Santos and Debis, other prior cases related to the distribution of Lots 01 and 06 had been

42

decided. The Superior Court took judicial notice of these prior cases in granting summary judgment against Nicholas. These prior decisions are discussed below.

The first of those cases was <u>Santos v. Santos</u>, Trust Territory High Court Civil Action No. 212-76 (1976), which involved a dispute over the proceeds of a war claims award for damage to and use of Lot 01, which had belonged to Debis. In that action, Jose, one of Santos' seven children, claimed that Lot 01 belonged to him alone and, therefore, the war claims proceeds should be awarded solely to him. The High Court, however, ruled that each of the seven children of Santos were entitled to a one-seventh share of the net proceeds of the war claims award.

Nicholas' father Vicente had testified in <u>Santos v. Santos</u> that his father, Santos, had given him another parcel of land, that he was not entitled to share in the war claims proceeds accruing from Lot 01, and that he disclaimed any interest in Lot 01.

Also in 1976, two probate cases were filed with the High Court: <u>In Re Estate of Eduvigis Camacho Santos</u>, Probate Case No. 30, and <u>In Re Estate of Nicholas Camacho Santos</u>, Probate Case No. 31. A consolidated order of distribution was entered in those actions on December 20, 1979. Lot 06 was distributed to the heirs of Vicente, who had passed away four (4) days before the order was entered. No part of Lot 01 was awarded to Vicente's heirs.

About eight (8) years later, in 1988, Santos' daughters Consolacion and Maria sued their brothers Ramon, Enrique, Jose, Vicente's heirs, and their sister Francisca in the Commonwealth

43

Trial Court to set aside the High Court order of distribution earlier noted, on the ground that they were not given notice of the proposed distribution and that they did not receive any share in Santos' and Debis' estates.[2] Nicholas, the appellant herein, knew that the order of distribution which was challenged by Consolacion and Maria did not award Vicente's heirs any part of Lot 01. However, Nicholas did not move to join the two sisters as co-plaintiff, nor did he file a separate suit, on behalf of Vicente's heirs or himself, claiming an interest in Lot 01. The action by Consolacion and Maria was subsequently dismissed with prejudice pursuant to a stipulation to dismiss executed by the parties and filed on August 31, 1988.

Also in 1988, Vicente's estate was probated.[3] Nicholas' sister, Maria Carmen S. Villagomez, was appointed administratrix of the estate. Nicholas was served a copy of the notice of hearing and the petition by registered mail. The inventory of estate property filed with the Court listed only Lot 06. Lot 01 was not listed. Nicholas, through his counsel, filed a claim of interest which stated that "the property listed in the inventory filed in this action" belonged to him and his brothers Ramon and Jose by partida. It did not mention Lot 01, or any claim thereto.

Nicholas' brother, Jose, subsequently advised the administratrix' counsel by letter that the property should go to

---

[2]Ooka, et al. v. Santos, et al., CTC Civil Action No. 88-367.

[3]In Re Estate of Vicente Agulto Santos, CTC Civil Action No. 88-593.

all seven children of Vicente. After a hearing, the court denied Nicholas' claim that Vicente had given Lot 06 by partida to his sons Nicholas, Ramon and Jose only. The court found that Nicholas had not proven his claim of partida and held that all of Vicente's children had an equal undivided interest in Lot 06.

Lot 06 was distributed on October 13, 1989 to Vicente's seven children, subject to a life estate in favor of Vicente's widow, Antonia. Nicholas subsequently moved for a "new trial," which was denied.

B. Summary Judgment Ruling

In the trial court, Defendants herein moved for summary judgment claiming that, as a matter of law, Nicholas' claim of ownership to Lot 01 was barred (1) under the principles of res judicata; (2) by Rule 60, Com.R.Civ.P., because the action was one to alter or amend a judgment; (3) by the pertinent limitations statutes -- 7 CMC § 2504 (requiring actions against an estate administrator or executor to be filed within two years after appointment), and 8 CMC § 2924(b) (relating to limitations on the presentation of claims against a decedent's estate); and, finally, (4) under the doctrine of laches.

The trial court found, as undisputed fact, that (1) Nicholas and his father Vicente were aware of Probate Case Nos. 30 and 31, as well as High Court Civil Action No. 212-76; (2) the order of distribution in the probate cases involving Santos and Debis' estates were unchallenged for eight years, during which period

Nicholas did nothing to assert any interest he may have through the deed of gift, which deed purportedly conveyed Vicente's share in Lot 01 to Nicholas; and (3) even after Consolacion and Maria sued in 1988 to set aside the 1979 consolidated order of distribution, Nicholas did nothing to assert his interest.

The trial court also found as undisputed fact that Vicente expressly had disclaimed any interest to Lot 01 in High Court Civil Action No. 212-76. The trial court held that Nicholas is in privity with his father Vicente, and, therefore, as a matter of law, Vicente's declaration disclaiming any interest in Lot 01 is binding on his privy, Nicholas. Such declaration was thus contrary to Nicholas' claim of ownership to the property.

## II.

The main issue on appeal is whether the trial court erred in granting summary judgment in favor of defendants. An order granting summary judgment is reviewed de novo. Estate of Mendiola v. Mendiola, Appeal No. 90-042 (N.M.I. Aug. 28, 1991). If this court agrees there is no genuine issue of material fact, the analysis shifts to whether the substantive law was correctly applied. Camacho v. Northern Marianas Retirement Fund, Appeal No. 90-007 (N.M.I. Sept. 21, 1990).

Nicholas specifically challenges the court's ruling that his claim was: (a) barred by res judicata; (b) barred by relevant statutes of limitations; (c) barred by laches; and (d) barred by Vicente's past disclaimer of any interest in Lot 01. All of these issues are questions of law and are reviewable de novo. Dilutaoch

46

v. C&S Concrete Block Products, 90-016 (N.M.I. Feb. 1, 1991). The trial court's specific conclusions regarding the application of res judicata are questions of law to be reviewed de novo. Richardson v. Alabama State Board of Education, 935 F.2d 1240, 1244 (11th Cir. 1991).

Finally, Nicholas challenges the failure of the trial judge to recuse himself from the case even though the judge's in-court clerk is the spouse of one of the moving defendants. We review a judge's failure to recuse himself under an abuse of discretion standard. Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703 (9th Cir. 1990); United States v. Hamilton, 792 F.2d 837 (9th Cir. 1986).

III.

Nicholas claims a "proportionate share" of Lot 01 by virtue of a deed of gift executed by his father, Vicente, dated March 6, 1979. Nicholas' claim to this property thus stands or falls on whether his father owned an interest in the property. In his complaint, Nicholas asserted that, upon Debis' death in 1943, his grandfather Santos (Debis' then only surviving heir) succeeded as owner and, upon Santos' death in 1968, his seven children, including Vicente, became the owners, with each having an equal undivided one-seventh interest in the property.

Nicholas' action is a collateral attack on the decree of distribution entered on December 20, 1979 by the Trust Territory High Court in the probate cases of Debis (Probate Case No. 30) and

of Santos (Probate Case No. 31). The consolidated order, or decree, of distribution distributed Lot 06 to Vicente's heirs, but distributed Lot 01 to Ramon, Enrique, and Jose only. Nicholas contends that his father was entitled to a proportionate share in Lot 01, that his father was not given any notice of the petition for final distribution, and the decree of distribution which was issued should be set aside as void.

Defendants defended claiming that the December 20, 1979 decree distributing the estates of Debis and Santos was _res judicata_ as to Vicente and his privy Nicholas and, therefore, Nicholas suit was barred and should be dismissed. Defendants moved for summary judgment based on the res judicata effect of the 1979 distribution decree, as well as on the other defenses earlier noted.

A. Res Judicata

We now examine whether the 1979 decree of distribution is res judicata and bars this action by Nicholas. Before we do so, we set forth the "general rule of res judicata":

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

48

_Commissioner v. Sunnen_, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed 898 (1948), cited in 18 C.Wright, A.Miller & E.Cooper, _Federal Practice and Procedure_ § 4406, at p. 45 (1981 ed.), which, in turn, we cited with approval in _Sablan v. Iginoef_, Appeal No. 89-008 (N.M.I. June 7, 1990).

The res judicata effect of a prior judgment depends on the scope of the cause of action or claim in that suit. _Wright, Miller & Cooper_, § 4406. "The process of defining the claim or cause of action is thus aimed at defining the matters that both might and _should_ have been advanced in the first litigation". _Id_. (Emphasis in original). "Under res judicata, a final judgment on the merits of an action precludes the parties _or their privies_ from relitigating issues that were or could have been raised in that action." _Allen v. McCurry_, 449 U.S. 90, 101 S.Ct. 411, 414, 66 L.Ed. 2d 308 (1980) quoted in Wright, Miller & Cooper § 4406, n.4 (emphasis supplied).

This court has examined the decree of distribution entered on December 20, 1979, and, in the light of the principles of res judicata, we note that the scope of Probate Case Nos. 30 and 31 covered the matter pertaining to the intestate succession of Lot 01 and Lot 06. This court also notes that, at the time the Probate cases were filed in 1976, Vicente was a presumptive heir entitled to notice thereof and he in fact was notified and was aware of the filing of those cases. We agree with the trial court that Nicholas's claim to an interest in Lot 01 is barred under the principle of res judicata. Nicholas' present claim to an

49

interest in Lot 01 derives from his father Vicente's deed of gift to him in 1979. Nicholas stands in privity to Vicente with respect to the probate cases and the adjudication entered thereunder. In re Hanson's Estate, 271 P.2d 563, 567 (Cal.App. 1954); Fouke v. Schenewerk, 197 F.2d 234, 236 (5th Cir. 1952). Vicente never claimed any interest in Lot 01 during the probate proceeding. He only claimed an interest in Lot 06, the property given him by his father in 1943. The decree of distribution confirmed that conveyance. Since Nicholas is in privy to Vicente, he cannot now assert a claim contrary to the position taken by his predecessor. The probate adjudication binds both Vicente and Nicholas, and Nicholas may not now relitigate a matter that has been laid to rest. Without such a rule, there may never be an end to the probate litigation.

Buttressing the analysis above is Vicente's own disclaimer as to any interest in Lot 01 during the probate proceedings. The Superior Court, taking judicial notice of the proceedings before the High Court, found compelling the express disclaimer made by Vicente over any interest in Lot 01. Santos v. Santos, High Court Civil Action No. 212-76. Because Nicholas stands in privity with Vicente, Vicente's disclaimer is attributable to Nicholas.

Finally, the record from the probate of Vicente's estate, In Re the Estate of Vicente Agulto Santos, Superior Court Civil Action No. 88-595, shows the only property listed in Vicente's estate inventory was Lot 06; Lot 01 was not included. Nicholas contends that Lot 01 was not included in Vincente's estate inventory because

50

Vicente had already conveyed to Nicholas his interest in that property. However, Nicholas never claimed any such ownership interest during the pendency of probate of Santos' estate prior to 1979. Moreover, Nicholas was aware that the 1979 decree of distribution allotted no portion of, or interest in, Lot 01 to Vicente. For eight years Nicholas stood idly by without doing anything to assert his alleged interest in Lot 01 or, at the least, filing an action to set aside the 1979 decree of distribution.

The basis of Nicholas' collateral attack on the 1979 decree is that no notice was given Vicente (or Nicholas) of the proposed petition for distribution and the hearing thereon. Nicholas asserts that he was denied his right to procedural due process which amounted to a jurisdictional defect, and renders the decree of distribution void. In support he cites Hesthegan v. Harby, 481 P.2d 438 (Wash. 1971). The claimants in Hesthegan, nieces and nephews of the deceased, had been provided with no notice whatsoever of the probate proceeding. The court in Hesthegan held the administrator's failure to notify claimants violated the jurisdiction's statutory notice requirements (Id. at 442) and due process, which required that the claimants received notice of "the pendency of the probate proceedings." (Id. at 444).

In the instant case, Vicente had been notified of the pendency of the probate proceedings. Thus, the issue presented narrows to whether due process also requires that Vicente have received notice of each subsequent hearing in the probate process. If the answer to this question of law is yes, then the court would have lacked

51

jurisdiction to enter its decree of distribution and that decree would be rendered null and void as to Nicholas.

Nicholas asserts that Rule 7 of the High Court Rules of Civil Procedure[4] required that all subsequent filings be served on each of the parties affected thereby. Otherwise, he further asserts, any order taken as a result would be void as to those not given notice. We disagree.

Given the circumstances presented by this case, the only process due Vicente at law was notice of the filing of the probate cases, not notice of subsequent filings.

We have previously ruled that a mere lack of notice does not result in a due process violation. *In Re Estate of Mueilemar*, Appeal No. 90-020 (N.M.I. Nov. 29, 1990); *Sablan v. Iginoef*, Appeal No. 89-008 (N.M.I. June 7, 1990). One claiming lack of notice must show that notice was due and the reason why notice was due. A claim of lack of notice must be examined from the circumstances of each case to determine whether its absence justify setting aside the action taken. *Estate of Mueilemar*, slip op. at 5-6. We are not convinced that the lack of notice asserted by Nicholas rises to a procedural due process violation which denied the court jurisdiction and thereby rendered the decree of distribution void as to Vicente when entered.

_____

[4]Actually, Rule 5, not Rule 7, of the Trust Territory Rules of Civil Procedure, which contains the language quoted in Appellant's Brief, was effective and applicable to proceedings during 1979, the year in which the hearing on distribution was held. See Trust Territory Civ. Pro. Rule 66 (providing that new rules govern all further proceedings in actions filed prior to 1977 but still pending).

In *Kam Chin Chun Ming v. Kam Hee Ho*, 371 P.2d 379 (Hawaii 1962), appellant's attorney had entered an appearance in a probate case in 1941. In 1948, the appellant and his family members agreed to a Family Settlement, and the probate court subsequently entered an order distributing their father's estate. In 1951, a dispute over a lease arose and the appellant sought to vacate the 1948 order on the grounds that appellant's attorney "was not served with any of the papers in the probate proceeding." (*Id*. at 336).

The Supreme Court of Hawaii held, however, that the probate court's order "will not be vacated merely because of lack of notice." (*Id*. at 403). The court found that the appellant's testimony showed "that back in 1941 he knew what was in his father's will and expected trouble." (*Id*. at 402). The court also found compelling that the appellant had agreed to the Family Settlement. (*Id*. at 403, *citing* United States v. Borchers, 163 F.2d 347 (2nd Cir. 1947) and United States ex rel. Knupfer v. Watkins, 159 F.2d 675 (2nd Cir. 1947)(holding that the right of one who has entered an appearance to have notice of the application for judgment does not confer any right to have vacated a decree entered by his own consent. *See* Kam Chin Chun Ming, at 403.)

In the instant case, the required notice informing Santos' heirs of the filing of the probate petition was provided to Vicente, Nicholas' predecessor in interest, in 1976. Hence, Vicente was aware of the pendency of the probate cases. Among the properties subject to probate were Lot 01 and Lot 06. These probate cases were filed at about the same time as the war claims

proceeds case. Vicente testified in the war claims proceeding that he disclaimed any ownership interest in Lot 01. When Vicente allegedly executed the deed of gift on March 6, 1979, conveying his interest in Lot 01 to Nicholas, it was incumbent on either or both of them to advise the administrator in the probate proceedings, Ramon, of this transaction, so that the administrator and the court would be so apprised.

Neither Vicente nor Nicholas did so. Eight years later, when Consolacion and Maria filed suit to set aside the decree of distribution at issue, Nicholas again failed to assert that he received a deed from Vicente, which formed the basis of Nicholas' present action. Upon agreement of the parties, the case filed by Consolacion and Maria was dismissed with prejudice. That case would have been an appropriate vehicle through which Nicholas could have reasonably asserted his interest. Its dismissal with prejudice, however, bound Nicholas, further precluding him from raising his claim of interest in Lot 01 and from collaterally attacking the decree of distribution, essentially on the same grounds raised by Consolacion and Maria. See, Sablan v. Iginoef, supra. Nicholas failed to do so and the dismissal of that case with prejudice further acts as a bar to his collateral attack on the 1979 decree of distribution. Given the circumstances of this case, the court deems Nicholas' silence regarding his alleged interest in Lot 01 as his consent to the prior determinations of ownership of Lot 01. Nicholas now has no right to have the 1979 decree of distribution vacated on the grounds that Vicente's lack

of notice denied the probate court jurisdiction to enter that decree. Kam Chin Chun Ming v. Kam Hee Ho, supra, 371 P.2d 379.

We, accordingly, hold that Nicholas' action to set aside the 1979 decree of distribution is barred by res judicata. Nicholas could have and should have raised his claim to Lot 01 at some point prior to this action. Furthermore, there was no due process violation in the 1979 probate proceeding which would justify our collaterally vacating that order. We find that Vicente was accorded due notice of the pendency of the probate proceeding but that he disclaimed any interest in Lot 01, the property at issue.

Our opinion does not mean that litigants involved in a probate proceeding need only be given the initial notice of a probate proceeding to be accorded proper due process of law. There may be circumstances where, after the initial notice, the subsequent proceedings are conducted in a manner which clearly violates one's right to due process under the law. We are not satisfied that the circumstances of this case, as appears from the record, rises to a level which constitute a due process violation.

In view of our holding on the res judicata issue, we need not address the issue pertaining to the limitations of action statutes.

B. **The Failure to Recuse**

Nicholas also challenges the failure of the trial judge to recuse himself from this case because his in-court clerk is the spouse of one of the moving defendants. Nicholas contends that this relationship creates the appearance that the trial judge would not be impartial. We summarily reject this argument for the reason

55

given by the trial judge: it was untimely. Nicholas' written request for the trial judge to consider recusing himself from the case was made the day after the motion for summary judgment was scheduled to be heard by the trial judge. See, Sablan v. Iginoef, supra. Even if it were timely filed, however, we are not persuaded that the trial judge abused his discretion by denying the suggestion for recusal. The reasons given by Nicholas do not justify recusal. See Milgard Tempering, Inc. v. Selas Corp. of America, supra, 902 F.2d 703.

## IV.

Accordingly, the summary judgment granted in favor of defendants is hereby AFFIRMED.

Dated at Saipan, MP, this 25th day of March, 1992.

_____
Jose S. Dela Cruz, Chief Justice

_____
Ramon G. Villagomez, Associate Justice

_____
Larry L. Hillblom, Special Judge