Theodis STOKES, Plaintiff,

v.

CITY OF MONTGOMERY, ALABAMA, Defendant.

Civ. A. No. 87–T–1034–N.

United States District Court, M.D. Alabama, N.D.

Oct. 31, 1988.

W. Troy Massey, Massey, Means & Thomas, Theron Stokes, Montgomery, Ala., for plaintiff.

J. Bernard Brannan, Jr., Brannan & Guy, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit premised on the fourteenth amendment to the U.S. Constitution, as enforced by 42 U.S.C.A. §§ 1981, 1983, and on 42 U.S.C.A. §§ 2000e through 2000e–17, popularly known as Title VII of the Civil Rights Act of 1964, as amended, plaintiff Theodis Stokes successfully charged that defendant City of Montgomery, Alabama refused to promote him because he is black. This cause is now before the court on Stoke's motion for award of attorney fees. Based upon the evidence presented at a hearing on the motion, the court has concluded that the motion should be granted and that Stokes is entitled to $110,370.00 for attorney fees and $1,822.66 for expenses.

### I. Attorney Fees

The attorney fees provisions of 42 U.S.C. A. § 1988 and of Title VII, 42 U.S.C.A. § 2000e–5(k), authorize courts to award reasonable fees to prevailing civil rights litigants. Plaintiff Stokes is unquestionably the prevailing litigant in this lawsuit and is thus entitled to reasonable attorney fees.

The number of hours reasonably expended to prosecute the lawsuit and the prevailing market rate provide an important starting point for any fee determination. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). In making its fee award, the court will therefore start by determining: (a) the number of hours reasonably devoted to this litigation; and (b) the prevailing market rate for non-contingent work performed by similarly situated attorneys in similar cases in the community. The product of these two figures will provide the court with a "lodestar" figure. The court will then determine whether any portion of this lodestar fee should be adjusted upwards or downwards. *Id.* at 434, 103 S.Ct. at 1940.

In determining the lodestar figure and in deciding whether it should be adjusted, the court will rely upon, where applicable, the twelve factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal and factual questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

## A.  Reasonable Hours

Plaintiff Theodis Stokes was represented by two attorneys: W. Troy Massey and Theron Stokes.  Massey claims 210.5 hours and Theron Stokes claims 160.2 hours.

The court has considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed.  The evidence at the attorney fees hearing as well as a review of the law on race discrimination shows that, while race discrimination cases are not so rare or unique that a lawyer engaging in such litigation does not have a firm idea of what to expect or how to prepare, such cases are often factually complex.  This is largely due to the showing a plaintiff must make to prevail.  *See generally Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  Race discrimination cases frequently turn on whether a plaintiff can establish that the reasons given for an adverse employment decision are a pretext for a race discrimination.  Meeting this burden typically requires the use of comparative evidence whereby the plaintiff contrasts his treatment with the treatment of majority group members.  *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 15 (2d ed. 1983).  Discovering and organizing such comparative evidence can be a time consuming and painstaking process.  Indeed, this was the case here.

The City of Montgomery put forward numerous reasons for not promoting plaintiff Stokes and, in response, Stokes's attorneys had to marshal evidence to prove each of these reasons pretextual.  To do this, plaintiff's attorneys had to engage in broad-ranging discovery, delving into both the general and specific employment practices of the City of Montgomery.  Stoke's attorneys then had to organize and present this evidence in a manner that would convince the court that the reasons given for failing to promote Stokes were pretextual.  Not only did Stokes's attorneys do this, they did it well.

In spite of the factual difficulties presented, Stokes's lawyers obtained completely successful results.  The court found that Stokes was a victim of race discrimination and ordered the city to promote him and to award him backpay.  Moreover, although this was not a class action, the results obtained by Stokes's attorneys should discourage the city from any future discrimination against its black employees.  *City of Riverside v. Rivera*, 477 U.S. 561, 574–76, 106 S.Ct. 2686, 2694–95, 91 L.Ed.2d 466 (1986) (attorney fee award in civil rights case should reflect not only specific individual relief obtained but also any broad social benefit that may indirectly result from the litigation).  Based on the above, the court finds that, as a general matter, the expenditure of 370.7 hours in the prosecution of this case was entirely reasonable.

■  However, the city has challenged several of the hours listed in the time sheets filed with the court by Stokes's attorneys.  While the bulk of these challenges are without merit, several have merit and the two attorneys' compensable hours will be reduced accordingly.  Specifically, the city challenges W. Troy Massey's claim for compensation for .5 of an hour for filing the complaint in this case and .3 of an hour for reading the notice of appearance filed by Theron Stokes; the city also challenges Theron Stokes's claim for compensation for 2.0 hours relating to filing his notice of appearance.  In examining the specific hours claimed by a prevailing party seeking attorney fees, the court must exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40; *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988); *see also* S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913 (hereinafter 1976 U.S.Code Cong. & Ad.News).  The court finds the above 2.8 hours were unnecessary and therefore are not compensable.

■  The city has made several other specific challenges, but none of the other challenged hours were excessive, redundant, or

otherwise unnecessary. The city challenges Massey's claim that he spent 47 hours preparing his pretrial brief. It offers no reason as to why this amount of time is unreasonable other than that it believes 47 hours is a long time. Plaintiff's brief was well written and thorough, both as to law and facts. Expending 47 hours to produce the brief was reasonable.[1]

The city next argues that compensation sought for time spent taking depositions should be cut in half because both of plaintiff Stokes's attorneys attended these depositions. "There is nothing inherently unreasonable about a client having multiple attorneys," *Norman*, 836 F.2d at 1302; "a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.) (emphasis in original) (citations omitted), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). *Accord Norman*, 836 F.2d at 1302; *Jones v. Central Soya Company, Inc.*, 748 F.2d 586, 594 (11th Cir.1984).

The evidence showed that, although a significant amount of litigation in the Montgomery area is handled by only one lawyer on each side, it is customary for parties involved in certain types of federal litigation, such as race discrimination cases, to be represented by two attorneys, and for both attorneys to attend important depositions. The evidence also showed that plaintiff Stokes needed two attorneys, both at trial and before trial at depositions. The depositions were critical to the plaintiff's contention that the city's reasons for not promoting him were racially pretextual. In order to delve into these reasons thoroughly, and in order to ensure that all relevant avenues were both recognized and explored, it was necessary for both of plaintiff's attorneys to be present at depositions, to assist each other in uncovering relevant evidence. By attending these critical depositions together, Stokes's two attorneys were not unreasonably doing the same work; none of the hours claimed for taking depositions is due to be excluded.

The city also argues that Massey's hours are due to be reduced because the lowest amount of time he ever claims is .3 of an hour. The court has examined his time sheets, and, with the above discussed exception of the .3 of an hour claimed for reading a notice of appearance, none of his claimed hours are due to be excluded.

Finally, the city argues that the court should reduce the hours claimed by plaintiff's two attorneys because their time sheets are vague. The court had no trouble analyzing the time sheets, and it finds that they are sufficiently specific to justify compensation for all the hours claimed, except for the previously discussed hours.[2] *See Berberena v. Coler*, 753 F.2d 629, 633–34 (7th Cir.1985).

In light of the above, the court finds the following hours to be reasonable and compensable:

W. Troy Massey . . . . . . 209.7
Theron Stokes . . . . . . . . 158.2

### B. Prevailing Market Rate

To determine the prevailing market rate the court will consider the following *Johnson* factors: customary fee in the community; skill required to perform the legal services properly; the experience, reputation and ability of the attorney; time limitations; preclusion of other employment; undesirability of the case; nature and length

---

1. Indeed, in other Title VII and § 1983 cases, this court has often complained that plaintiffs' counsel "dumped the facts on the court" without taking the time in their briefs to analyze the case, either factually or legally. Stokes's attorneys, in contrast, took the time to do a very competent job; they should not be penalized for their conscientiousness.

2. At the attorney fees hearing, the court questioned the city's counsel as to what hours he was claiming to be unreasonable, and only the above discussed challenges were argued. To the extent that the city's brief raises a few other claims, the court has examined them and none of them has merit.

of professional relationship with the client; and awards in similar cases.

*Customary Fee.* Plaintiff Stokes contends that the customary fee for attorneys of similar experience in the community support an hourly non-contingent fee of $150 for his two attorneys. The evidence shows that, in Alabama, attorneys practicing in the same and similar areas of law with approximately the same experience as plaintiff's two attorneys charge a non-contingent fee ranging between $100 and $150 an hour.

*Skill Required to Perform the Legal Services Properly.* As discussed previously, litigating civil rights cases, such as the one at bar, requires a high degree of skill. The work product of Stokes's attorneys demonstrates a very high degree of skill in this type of litigation.

*Experience, Reputation and Ability of the Attorneys.* W. Troy Massey has been practicing since 1975, and Theron Stokes has been practicing since 1981. Each enjoys a good reputation as a civil rights lawyer. Both the evidence at the attorney fees hearing and the ability they demonstrated in litigating this case establish that they should be compensated at the upper limit of the range in which Alabama attorneys practicing in the same and similar areas of law are compensated.

*Time Limitations.* This factor requires "some premium" where there has been "[p]riority work that delays the lawyer's other legal work." *Johnson,* 488 F.2d at 718. The trial of this cause was moved up approximately one month which no doubt forced the lawyers to give this case a more concentrated amount of their attention than was anticipated. However, the time limitations factor was not present to a significant or substantial degree in this case.

*Preclusion of Other Employment.* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson,* 488 F.2d at 718.

There is not substantial evidence of this factor.

*Undesirability of the Case.* The evidence before the court establishes that civil rights litigation, such as this, is still seen as very undesirable because it stigmatizes an attorney as a "civil rights lawyer" and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer. *See Hidle v. Geneva County Board of Education,* 681 F.Supp. 752, 756 (M.D.Ala. 1988); *York v. Alabama State Board of Education,* 631 F.Supp. 78, 85 (M.D.Ala. 1986).

*Nature and Length of Relationship with Client.* There is no evidence of a prior professional relationship in this case.

*Awards in Similar Cases.* This court has awarded non-contingent fees in the range of $75–150 an hour in other civil rights cases. *See, e.g., Hidle, supra; Georgia Association of Realtors v. Alabama Real Estate Commission,* 678 F.Supp. 854 (M.D.Ala.1987); *Birl v. Wallis,* 649 F.Supp. 868 (M.D.Ala.1986); *York, supra.*

Based on these criteria, the court is of the opinion that the following hourly fees for plaintiff's counsel reasonably reflect the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases:

W. Troy Massey . . . . . . $150
Theron Stokes . . . . . . . . $150

■ In setting the appropriate market rate, the court has compensated for delay in payment by basing the award on current rates. A court may recognize the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. *Johnson v. University College of University of Alabama in Birmingham,* 706 F.2d at 1210–11.

## C. Lodestar Calculation

The unadjusted lodestar for each attorney consists of the product of the attorney's compensable hours times his prevail-

ing market fee. The lodestar for each of the attorneys is as follows:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| W. Troy Massey | 209.7 | $150 | $31,455 |
| Theron Stokes | 158.2 | $150 | $23,730 |

### D. Adjustment

■ Stokes's attorneys seek, at a minimum, a 100% upward adjustment of the lodestar figure. For the reasons that follow, the court concludes that an upward adjustment of 100% is warranted in this case.

Eleven of the twelve Johnson factors were examined in the above discussion of reasonable hours and reasonable fees. Factor six, whether the fee is fixed or contingent, was not examined. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a majority of the United States Supreme Court held that attorney fees may be enhanced due to contingency of payment. *See* 483 U.S. at ——, 107 S.Ct. at 3089 (O'Connor, J., concurring); 483 U.S. at ——, 107 S.Ct. at 3091 (Blackmun, J., with whom Brennan, Marshall and Stevens, JJ., join, dissenting). There, the district court had enhanced a fee award focusing on the novelty and risk of the litigation. A four-person plurality reversed, holding that enhancement based on risk was appropriate in only "exceptional cases." *Id.* at ——, 107 S.Ct. at 3088 (White, J., plurality opinion). Justice O'Connor provided the critical fifth vote for the judgment of the Court, agreeing with the plurality that a fee was inappropriate in the case before the Court, but agreeing with the dissenters that a fee enhancement is not inappropriate generally. Because she was more restrictive than the dissenters in her approach as to when enhancement is appropriate, the court should look primarily to her opinion to determine when a fee should be enhanced. *See Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir.1988) (per curiam); *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 53 n. 6 (D.C.Cir.1987), *vacated on other grounds on rehearing*

*and remanded*, 857 F.2d 1516 (D.C.Cir. 1988) (en banc).

Justice O'Connor wrote that "compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class*, rather than on an assessment of the 'riskiness' of any particular case." 483 U.S. at ——, 107 S.Ct. at 3089 (emphasis in original). She further stated that certain circumstances had to exist before a fee enhancement was appropriate. Specifically, it is the fee applicant's burden to prove the degree to which the relevant market compensates for contingency. *Id.* at ——, 107 S.Ct. at 3090. Also, "a court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel," and no enhancement is appropriate unless without it "the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at ——, 107 S.Ct. at 3091 (*quoting* White, J., plurality opinion).

In *Hidle v. Geneva County Board of Education*, this court examined evidence as to the degree the Alabama market compensates for contingency, and as to the amount of enhancement necessary to bring fees in civil rights cases within the range that will attract competent counsel in the Alabama market. After an examination and discussion of the evidence, the court concluded that it was necessary to enhance the attorney fees by 100%. 681 F.Supp. at 758. The evidence before the court in this case completely establishes the facts found to exist in Hidle.

The evidence shows that plaintiff Stokes's attorneys took this case on a pure contingency fee basis. Lawyers in Alabama are compensated for taking cases on a contingency basis.[3] The market principle in this state is that "lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are as-

---

**3.** Because there are at most 25 lawyers specializing in civil rights in all of Alabama, and all of them take cases throughout the entire state, the relevant market in this case is the State of Alabama.

sured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Moreover, lawyers in Alabama who take cases on a contingency basis are very highly compensated for taking the risk that they will be paid only in the event of success. They frequently expect to obtain well over two times the traditional hourly rate for non-contingency work, and it is not uncommon for fees in a successful contingency case to range from $450 to even $1,000 an hour.

Most of the cases in which lawyers agree to contingency arrangements involve personal injury, medical malpractice, or debt collection. Because of the possibility of receiving a contingency fee which works out to be well over twice a normal hourly rate, there is no shortage of lawyers willing to engage in those types of litigation. Very few lawyers in Alabama are, however, willing to undertake contingency arrangements in employment discrimination cases. This difference is for the most part due to the availability of substantial fee enhancement in the former cases, and the lack of such in the latter cases. Stokes, as did Hidle, has convincingly shown that attorneys in the state are unwilling to undertake employment discrimination cases on a contingency basis because, in large part, they believe the cases are uneconomical; the fees they receive when successful are not high enough to justify taking the risk of losing such cases, especially since there is plenty of other more stable and profitable work available. In fact, a substantial percentage of the lawyers that handled contingency fee employment discrimination cases in the past have stopped doing so for this reason; moreover, the evidence shows that very few, if any, young lawyers in the state are going into the practice of civil rights and employment discrimination law because it is so uneconomical. As a result, there is a severe and critical shortage of lawyers regularly willing to handle employment discrimination cases on a contingency basis in this state; and those who are alleged victims of employment discrimination but who cannot afford to pay the costs and fees of litigation are, therefore, finding it increasingly more difficult to find counsel.

The evidence before the court further convincingly reflects that, only if attorneys who undertake such work are compensated, as are typical contingency fee attorneys, at a level that reflects the inherent risk of the contingency arrangement, will a sufficient number of competent counsel be attracted to represent alleged victims of employment discrimination who cannot afford to pay attorney fees. *See, e.g., Jones v. Central Soya Company, Inc.*, 748 F.2d 586, 593 (11th Cir.1984); *Yates v. Mobile County Personnel Board*, 719 F.2d 1530, 1534 (11th Cir.1983).

The city attempted to counter the above evidence by arguing that there is no need for enhancement in employment discrimination cases because lawyers will step in and fill any need out of a sense of moral obligation regardless of the financial risks. First of all, as the above evidence shows, this is not the case. Moreover, the evidence shows that the *pro bono* bar is not adequate to provide the "expertise" needed for the continued development of employment discrimination law. Both local and national pools of plaintiffs' lawyers, with an in depth knowledge about the theory and practice of employment discrimination law, are essential if the plaintiffs' perspective is to be fully and adequately represented both *in court*, in cases presenting new and complex legal issues, and *out of court*, before national and state legislative committees and before national and local bar committees where policy decisions affecting the direction of employment discrimination law are made. Fees in employment discrimination cases should therefore be awarded so a lawyer can litigate such cases for a living rather than as occasional charity work.

In sum, the evidence here, as did the evidence in *Hidle*, shows that Alabama citizens who believe they are victims of discrimination would face substantial, and often insurmountable, obstacles in finding counsel absent the likelihood of enhancement for contingency. "This is simply the law of supply and demand," and "lawyers

who take cases on contingent bases [must be] properly compensated for the risks inherent in such cases." *Delaware Valley*, 483 U.S. at ——, 107 S.Ct. at 3094 & 3101 (Blackmun, J., with whom Brennan, Marshall, and Stevens, JJ., join, dissenting). Enhancement of fees is not only appropriate but necessary.

The final question is how much enhancement is necessary. To place Stokes's attorneys in a position comparable to that of the more successful Alabama attorneys, it arguably would be appropriate to pay them as much as $500 per hour. However, " 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.' " *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (*quoting* 1976 U.S.Code Cong. & Ad.News at 5913). The enhancement should therefore be no more than necessary to bring the fee "within the range that would attract competent counsel." *Delaware Valley*, 483 U.S. at ——, 107 S.Ct. at 3091 (O'Connor, J., concurring). Based on all of the above, the court finds that the fee enhancement necessary to meet this bottom-end requirement for employment discrimination cases in Alabama is 100%. *See Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir.1988) (per curiam) (affirming district court's 100% enhancement as reflection of expectations for civil rights contingent case in San Francisco market); *Palmer v. Shultz*, 679 F.Supp. 68, 74 (D.D.C.1988) (finding that attorneys in Washington, D.C. market will not accept civil rights cases on contingent basis without at least a 100% enhancement). With this 100% adjustment, the attorney fees here are as follows:

| Attorney | Total |
|---|---|
| W. Troy Massey | $ 62,910 |
| Theron Stokes | 47,460 |
| Total Fees: | $110,370 |

## II. Expenses

In addition to attorney fees, Stokes's attorneys seek an award of $1,885.16 for expenses. This sum includes expenses for photocopying, long distance telephone calls, filing fees and deposition transcriptions. With the exception of the fact that the attorneys have mis-added their expenses, the total of which actually comes to $1,822.66, all of the expenses claimed appear to be reasonable and necessary. Accordingly, the court determines that Stokes's attorneys may recover $1,822.66 for expenses. *See generally Dowdell v. City of Apopka*, 698 F.2d 1181, 1188–92 (11th Cir.1983).

## III.

The court considers the items at issue here to be of the utmost regional, if not national, importance, and accordingly it concludes with the same remarks it made at the end of its opinion in *Hidle:*

At issue here is much more than the simple question of how much [Stokes's] attorneys should receive as attorney fees. At issue is Alabama's continued full and vigorous commitment to this Nation's lofty, but as yet unfulfilled, agenda to make the promises of this land available to all citizens, without regard to race or sex or other impermissible characteristic. There are at least two ways to undermine this commitment. The first is open and direct: a repeal of this Nation's anti-discrimination laws. The second is more indirect and, for this reason, somewhat insidious: to deny victims of discrimination a means for redress by creating an economic market in which attorneys cannot afford to represent them and take their cases to court. It appears from the undisputed evidence here that Alabama squarely falls within the latter scenario; the state's already too small pool of attorneys willing to take civil rights cases is growing even smaller. The court therefore hopes that with the relief it affords today this trend will not only be halted, it will be dramatically reversed; the court sees its relief as not an isolated measure, but rather as a broad recommitment of Alabama's legal resources to the full and vigorous pursuit of civil rights.

681 F.Supp. at 758–59.

An appropriate order will be entered.