Jacqueline BLACK, Plaintiff,

v.

M.G.A., INC., d/b/a Movie Gallery, Inc., Defendant.

No. Civ.A. 98–T–300–S.

United States District Court,
M.D. Alabama,
Southern Division.

June 21, 1999.

Jeffrey A. Lee, Maynard, Cooper & Gale, P.C., Birmingham, AL, Deborah A. Mattison, Charles Michael Quinn, Jill O. Radwin, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

Stuart D. Roberts, Maynard, Cooper & Gale, P.C., Birmingham, AL, for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Jacqueline Black brought this lawsuit by filing a complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e to 2000e–17, and 42 U.S.C.A. § 1981 against her employer, defendant M.G.A., Inc. Black claimed that M.G.A. discriminated against her in pay and that her supervisor retaliated against her for complaining about discrimination. She sought injunctive and declaratory relief as well as compensatory and punitive damages. On January 21, 1999, pursuant to Federal Rule of Civil Procedure 68, Black accepted an offer of judgment from M.G.A. in the amount of $ 5,000.00, exclusive of reasonable attorneys' fees and expenses, and a judgment was entered to that effect.

This lawsuit is now before the court on a motion by Black for attorneys' fees and expenses pursuant to the Civil Rights Attorney's Fee Award Act of 1976, as amended (42 U.S.C.A. § 1988), and Title VII (42 U.S.C.A. § 2000e–5(k)), in which Black requests a total of $ 58,470.18 for attorneys' fees ($ 53,244.99) and expenses ($ 5,225.19). For reasons to follow, the court concludes that the motion should be granted to the extent that Black is entitled to recover attorneys' fees and expenses in the amount of $ 15,581.90.

Section 1988 provides that, in civil-rights actions, including those under § 1981 and Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Title VII contains a similarly worded attorneys' fee provision. *See* 42 U.S.C.A. § 2000e–5(k). M.G.A. does not contest that Black is the prevailing party. Rather, M.G.A. argues that, because Black obtained only limited success, she should recover only low or no attorneys' fees.

As this court has stated repeatedly, the starting point in setting any attorney's fee is determining the "lode-

star" figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community. *See Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *accord Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F.2d at 1303. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Hensley,* 461 U.S. at 433–34, 103 S.Ct. at 1939–40.

■ In making the above determinations, the court is guided by the 12 factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[1] *See Blanchard v. Bergeron,* 489 U.S. 87, 91–92, 109 S.Ct. 939, 943–44, 103 L.Ed.2d 67 (1989); *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attor-

neys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These *Johnson* factors may "be considered in terms of their influence on the lodestar amount." *Norman,* 836 F.2d at 1299.

### 1. Reasonable Hours

Five attorneys—Sandra Reiss, Jill Radwin, Michael C. Quinn, Deborah A. Mattison, and Rocco Calamusa—represented Black in this matter. Reiss and Radwin were the primary attorneys on the case. The attorneys seek compensation for the following hours:

| | |
|---|---|
| Reiss | 187.82 |
| Radwin | 85.13 |
| Quinn | 8.50 |
| Mattison | 16.34 |
| Calamusa | 1.10 |

The court will consider two *Johnson* factors—the time and labor required, and the novelty and difficulty of the case—in assessing the reasonableness of the hours claimed by Black's attorneys.[2]

■ M.G.A. raises the following specific objections to the hours billed by Black's attorneys:

● M.G.A. objects to all of the time entries for Quinn, Mattison, and Calamusa, arguing that the case was not sufficiently complex to warrant the use of more than two attorneys. "However, '[t]here is nothing inherently unreasonable about a client having multiple attorneys.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 432 (11th Cir.1999) (quoting *Norman,* 836 F.2d at 1302). The hours of multiple attorneys are recoverable as long as the fee claimant shows that the time spent by those attorneys "reflects the distinct contribution of each lawyer to

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2. Although the court normally considers the amount involved and the results obtained as part of its determination of reasonable hours, the court will reserve consideration of that *Johnson* factor until after calculation of reasonable hours and hourly rates.

the case and is the customary practice of multiple-lawyer litigation." *Id.*

*Attorney Quinn:* The billing records indicate that all of Quinn's 8.5 hours were spent shortly before the scheduled trial date, reviewing the pretrial order, discussing the case with Reiss, and reading the summary-judgment briefs, all in preparation for trial, and discussing settlement with Reiss. Reiss contends that she and Quinn, an experienced trial attorney, were to try the case together, without Radwin, despite Radwin's position as a primary attorney on the case, because Radwin had no experience in jury trials or employment-discrimination trials. Black argues that it is reasonable and customary to bring in an experienced trial attorney to try a case. Although Black has presented no affidavits specifically attesting to the reasonableness of this practice, she has submitted affidavits of three attorneys who attest that they have reviewed the billing records for Black's attorneys in this case and that billing for the case was reasonable and in line with common practice. Furthermore, in the court's experience, it is not unusual for two attorneys to try an employment-discrimination case or for an attorney lacking trial experience to bring in an experienced trial lawyer to try a case. Therefore, the court will allow Quinn's hours.

*Attorney Calamusa:* Calamusa bills, first, for discussing the case with Reiss. Reiss bills for the same time. There is no evidence that Calamusa made a 'distinct contribution' to the case during this conversation, especially since the billing records do not reveal what aspect of the case they discussed. Thus the court will disallow Calamusa's 2/20/99 billing entry of 0.35 hours.

Calamusa also seeks compensation for 0.75 hours reviewing the file and analyzing the complaint and pay information. The time records reflect that Reiss drafted the complaint and that Calamusa was the only other attorney who reviewed the complaint before it was filed. The court finds that it is was reasonable for Reiss to have another experienced attorney review her work before filing it with the court and that the practice of having another experienced attorney review one's work is customary in multiple-lawyer litigation. The court further finds that Calamusa spent a reasonable amount of time on this task. The objection to this entry is overruled.

*Attorney Mattison:* The billing entries reflect that Mattison conferred with Reiss about settlement prior to filing the complaint, reviewed letters to opposing counsel written by Reiss, conferred with Reiss regarding strategy, reviewed various court orders, and guided and reviewed Reiss's work on the attorneys' fees motion.

On 10/12/98, Mattison billed 0.42 hours for an office conference with Reiss and a telephone call to the court regarding a response deadline. The court finds this time to have been reasonable and necessary. The objection to this time is overruled.

Mattison also seeks compensation for reviewing every procedural order issued by the court in this case. Because none of the orders was complex or unusual, the court can divine no reason why Mattison, a senior attorney who was not litigating the case, needed to review these orders rather than Reiss. Black's attorneys have not shown that Mattison made a 'distinct contribution' to the review of basic procedural orders. Therefore, the court will disallow the following billing entries, totaling 0.96 hours, from Mattison's bill: 0.17 hours on 8/24/98; 0.17 hours on 9/15/98; 0.17 hours on 9/19/98; 0.33 hours on 12/2/98; 0.12 hours on 12/28/98.

• M.G.A. contends that it was unreasonable for Reiss and Radwin both to bill for their participation in the status conference with the court held on 5/27/98. The court finds it reasonable and consistent with common practice for both counsel of record to participate and

bill for an appearance at a court-ordered status conference.

• M.G.A. objects to Reiss's and Radwin's billing a total of 4.0 hours from 7/9/98 through 7/13/98 for work on a motion to compel which, M.G.A. contends, Magistrate Judge Vanzetta Penn McPherson denied for failure to comply with the Federal Rules of Civil Procedure, specifically the requirement that the motion contain a specific written certification of a good-faith effort to reach agreement on the outstanding issues. In response, Black contends that, because the parties ultimately worked through the disputed issues of discovery, the time spent on the motion to compel was not wasted.

The court has reviewed the record and has determined that Judge McPherson did not deny the initial motion to compel, but instead pointed out Black's noncompliance with the written-certification requirement, ordered Black to remedy it, and ordered M.G.A. to respond to the motion to compel. M.G.A. did respond, indicating that it had provided some of the documents sought in the motion. Black filed an amended motion to compel in order to comply with the written-certification requirement. Judge McPherson denied the amended motion for noncompliance with a prior court order. Thereafter Judge McPherson ordered the parties to discuss further the documents sought in the original motion to compel and later, based upon the representations of the parties, denied the motion as moot. Therefore, the court finds that the motion to compel was ultimately successful and overrules M.G.A.'s objection.

M.G.A. also contests Reiss's and Radwin's billing entries totaling 1.75 hours for work on a second motion to compel because, it contends, the motion was the same as the first. Black contends that the motion was actually a different motion to compel that was never filed. Because it was never filed, the motion was not necessary to obtain relief in the case. The court will disallow Reiss's 7/21/98

entry of 0.25 hours and 0.75 hours of Radwin's 7/21/98 entry for time spent drafting the second motion to compel.

• M.G.A. contends that Radwin's time entry on 8/13/98 of 4.0 hours should be disallowed as redundant because Radwin and Reiss both billed for traveling to Dothan for Black's deposition and for preparing Black for her deposition. The court does not find it unreasonable for two attorneys to attend this deposition—in particular, in light of its importance. Also, because these two attorneys were relatively inexperienced, they needed assistance from each other. (Of course, as less experienced attorneys, they are entitled to a lower hourly rate.)

• M.G.A. objects to Mattison's 9/24/98 entry of 0.17 hours to "review correspondence 9/22/98" because M.G.A. has no record of any correspondence on that date and the time records do not reflect drafting or receiving such correspondence. Black's attorneys explain that the word "correspondence," was erroneously substituted for "order." Magistrate Judge MacPherson did enter an order on that date denying the plaintiff's motion to compel as moot. The court will allow this entry.

• M.G.A. objects to Mattison's 10/18/98 entry of 0.08 hours for "reviewing court's 10/9/98 order" because there was no order entered on that date. The objection is sustained. The court will disallow that billing entry.

• M.G.A. argues that Reiss's and Radwin's time spent preparing a motion to strike, and a brief on the admissibility of the affidavit of James Pongonis, submitted by M.G.A. in support of its motion for summary judgment, was excessive and unnecessary and should not be recoverable. The court finds the decision to file the motion reasonable. It also finds the amount of time spent on the motion reasonable. The objection is overruled.

• M.G.A. objects to a number of entries for work on the attorneys' fees motion. It is well-settled that compen-

sation for time expended in pursuit of attorneys' fees is proper. *Johnson v. Mississippi,* 606 F.2d 635, 638 (5th Cir. 1979). However, the hours spent must be reasonable.

M.G.A. contends first, that Reiss and Radwin spent excessive amounts of time drafting their affidavits in view of the fact that they modeled the affidavits in large part on affidavits previously submitted in other cases, and second, that Black's attorneys spent too much time reviewing and revising the itemization of fees and expenses. While the affidavits submitted in this case clearly were modeled on affidavits submitted by Black's attorneys in earlier cases, they were tailored for use in this case and differ significantly from the models. The court finds that the hours claimed for work on the affidavits are reasonable. Second, M.G.A. argues that Black's attorneys spent excessive time reviewing the billing itemizations and notes that 5.67 hours of billing entries contain descriptions at least in part related to reviewing Black's counsel's billing entries. However, as M.G.A. admits, only part of the 5.67 hours was spent reviewing the itemization. The court concludes, based on its review of the billing record, that the hours spent were significantly less than 5.67 hours and were reasonable. Therefore, the objections are overruled.

The court has also conducted an independent review of all of the hours for which compensation is sought to determine if there is any time that should be excluded because it is "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. The court is satisfied that, with the adjustments described above and the overall adjustments discussed below, these hours appear to have been reasonably necessary to secure relief in this case.

In sum, the court will allow the following hours:

| | | | | |
|---|---|---|---|---|
| Reiss: | 187.82 | − 0.25 | | 187.57 |
| Radwin: | 85.13 | − 0.75 | | 84.38 |
| Quinn: | 8.50 | − 0.00 | | 8.50 |
| Mattison: | 16.34 | − 1.04 | (.96 & .08) | 15.30 |
| Calamusa: | 1.10 | − 0.35 | | .75 |

## 2. Reasonable Hourly Rate

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. Reiss seeks compensation at a rate of $ 150 per hour, Radwin seeks $ 135 per hour, Quinn seeks $ 300 per hour, Mattison seeks $ 250 per hour, and Calamusa seeks $ 160 per hour.

■ To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee; the novelty and difficulty of the questions; skill required to perform the legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

*Customary Fee:* The affidavits submitted by Black suggest that the rates for attorneys comparable in skill and experience to Quinn and Mattison range from $ 150 to $ 300 in the relevant legal market and that the rates for attorneys comparable in skill and experience to Reiss, Radwin, and Calamusa range from $ 130 to $ 200.

■ M.G.A. challenges the propriety of awarding fees at these rates, arguing that the relevant legal market is Dothan, Alabama, and that the customary rates for attorneys in Dothan, range from $ 75 to $ 100 per hour for attorneys with between one and seven years of experience, depending on the type of issues involved, and that attorneys with significantly more experience normally charge up to $ 150 per hour.[3] "The rate of attorney's fees is that

---

**3.** Brief in Opposition to Plaintiff's Motion for Attorneys' Fees, filed March 19, 1999, exhibit

5 (Affidavit of Wade H. Baxley).

of the place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994). The relevant legal community is therefore Montgomery, Alabama, where the Middle District of Alabama is based. The court therefore will not limit its consideration of customary rates to those in the Dothan legal market.

*Novelty and Difficulty of the Questions:* Race-discrimination cases can be complex. Although the court believes that all employment cases are challenging, this case was not sufficiently difficult to justify an enhancement on this basis.

*Skill Required to Perform the Legal Services Properly:* Employment-discrimination cases require skilled attorneys. The attorneys performed the work that was required in a professional manner.

*Experience, Reputation, and Ability of the Attorney:* Quinn has had considerable experience in employment-discrimination litigation. Mattison has had considerable experience in civil-rights litigation. Reiss and Calamusa are less experienced, but have worked on a number of employment-discrimination cases. Radwin is quite inexperienced in employment litigation.

*Time Limitations:* Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson*, 488 F.2d at 718. There is no evidence of such limitation here.

*Preclusion of Other Employment:* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. Reiss and Quinn attest that, on several occasions in the last seven years, conflicts of interest have prevented the firm of Gordon, Silberman, Wiggins and Childs, where they are employed, from taking on "substantial corporate and defense business."

*Undesirability of the Case:* In general, civil-rights litigation is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. City of Montgomery*, 706 F.Supp. 811, 815 (M.D.Ala.1988), *aff'd*, 891 F.2d 905 (11th Cir.1989) (table). *See also Robinson v. Alabama State Dept. of Educ.*, 727 F.Supp. 1422, 1428 (M.D.Ala.1989), *aff'd*, 918 F.2d 183 (11th Cir.1990) (table); *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 756 (M.D.Ala.1988); *York v. Alabama State Bd. of Educ.*, 631 F.Supp. 78, 85 (M.D.Ala.1986).

*Nature and Length of Relationship with Client:* The attorneys had no previous professional relationship with the plaintiff.

*Awards in Similar Cases:* "The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. This court has awarded non-contingent fees in the range of $ 125 to $ 290 an hour in other civil-rights cases. *See, e.g., Dillard v. City of Greensboro*, 34 F.Supp.2d 1330 (M.D.Ala. 1999); *White v. Alabama*, No. 94–T–94–N, 1998 WL 60938, at *12 (M.D.Ala. Feb.4, 1998); *White v. Alabama*, No. 94–T–94–N, 1998 WL 117896, at *10 (M.D.Ala. Feb.3, 1998); *White v. Alabama*, No. 94–T–94–N, 1996 WL 378235, at *6 (M.D.Ala. June 20, 1996); *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F.Supp. 1492, 1498 (M.D.Ala. 1996); *Reynolds v. Alabama Dep't of Transp.*, 926 F.Supp. 1448, 1459 (M.D.Ala. 1995); *Coleman v. Cannon Oil Co.*, 911 F.Supp. 510, 516 (M.D.Ala.1995); *Lee v. Randolph County Bd. of Ed.*, 885 F.Supp. 1526, 1531–32 (M.D.Ala.1995); *James v. City of Montgomery*, No. 94–T–264–N, 1995 WL 271138 (M.D.Ala. April 19, 1995); *Stokes v. City of Montgomery*, 157 F.R.D. 514, 519 (M.D.Ala.1994); *Dillard v. City of Elba*, 863 F.Supp. 1550, 1554 (M.D.Ala. 1993); *Medders v. Autauga County Bd. of Educ.*, 858 F.Supp. 1118, 1129 (M.D.Ala.

1994); *Wyatt v. King,* No. 3195–N, 1991 WL 640065, at *3 (M.D.Ala. Dec.17, 1991), *aff'd,* 985 F.2d 579, 1993 WL 30358 (11th Cir.1993) (table); *Robinson,* 727 F.Supp. at 1428; *Stokes v. City of Montgomery,* 706 F.Supp. 811, 815 (M.D.Ala.1988), *aff'd,* 891 F.2d 905 (11th Cir.1989) (table).

The court is of the opinion, based on these criteria, that the current market rate for work performed by attorneys of similar knowledge and experience in similar cases is $ 135 an hour for Reiss, $ 110 an hour for Radwin, $ 190 an hour for Quinn, $ 180 an hour for Mattison, and $ 140 an hour for Calamusa.

### 3. Overall Reasonableness of Award in Relation to Results Obtained

■ If only partial success was obtained in the litigation, after calculating reasonable hours and fees, the court must make a final comparison of the fee calculation with the results obtained to determine whether a fee reduction is appropriate. *See* 1 Alba Conte, *Attorney Fee Awards* § 4.38 (2d ed.1993). The court finds that Black obtained limited success and will therefore reduce her fees by two-thirds, for reasons to follow.

■ M.G.A. argues that, under *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the court should award only low fees or no fees. In *Farrar,* the plaintiffs had sought $17 million in compensatory damages at trial against multiple defendants for violations of constitutional rights but recovered only nominal damages against one defendant. The trial court awarded the plaintiffs $ 280,000 in fees plus expenses and interest under 42 U.S.C.A. § 1988. The Supreme Court addressed the reasonableness of the fee award in light of the relief obtained by the plaintiffs and held that the plaintiffs could not recover attorneys' fees. *See id.*

In so deciding, Justice Thomas, in an opinion joined by three justices and concurred with by Justice O'Connor, reiterated *Hensley*'s holding that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award" and that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id.* at 114, 113 S.Ct. at 574. Where a plaintiff's purpose is the recovery of damages, Justice Thomas admonished, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 114, 113 S.Ct. at 575. And where the amount and nature of damages awarded is small in comparison to what the plaintiffs sought, "the court may lawfully award low fees or no fees." *Id.* at 115, 113 S.Ct. at 575. Justice Thomas concluded that, because the plaintiffs had sought compensatory damages but, due to their failure to prove an essential element of their claim, obtained only nominal damages, they were entitled to no fees at all. *See id.* Justice O'Connor, concurring with Justice Thomas in the judgment, explained that, in her view, the plaintiffs were not entitled to fees because theirs was a purely technical or Pyrrhic victory. *See id.* at 117, 113 S.Ct. at 576.

M.G.A. argues that, like the plaintiffs in *Farrar v. Hobby,* Black attained only a technical victory. The court disagrees. Whereas the *Farrar* plaintiffs obtained only a one-dollar nominal-damages award against one defendant, Black has obtained a judgment in the amount of $ 5,000 in satisfaction of her Title VII and § 1981 claims. Furthermore, Black contends—and M.G.A. does not dispute—that $ 5,000 is greater than the total amount of back-pay Black sought. Clearly, then, Black has obtained a significantly greater degree of success than did the plaintiffs in *Farrar.* The court accordingly finds that an award of no fees or extremely low fees, as permitted under certain circumstances by *Farrar,* is not warranted in this case.

Nevertheless, the court must assess Black's level of success. In her concurrence, Justice O'Connor suggested three factors that courts should consider in making the assessment: first, the difference between the amount recovered and the damages sought; second, "the significance

of the legal issue on which the plaintiff claims to have prevailed"; and, third, whether the litigation accomplished a "public goal." *Id.* at 121–22, 113 S.Ct at 578–79.

The court first will compare the relief sought with Black's recovery. Here, Black sought compensatory damages including back pay and front pay, punitive damages, a declaratory judgment, and an injunction. As noted earlier, she obtained only $ 5,000 in damages. However, because Black did not demand a specific amount in her complaint and she settled before trial, it is difficult to assess the amount of monetary damages she actually sought.

M.G.A. argues that the court should rely on the amounts Black requested in settlement negotiations. The record reveals that, before filing suit, Black offered to settle for $ 46,000 including attorneys' fees and costs. After filing suit, Black again offered to settle for $ 120,000 including attorneys' fees and costs. The evidentiary value of figures floated in settlement negotiations is somewhat limited because the plaintiff has an incentive to inflate the amount sought in the hope that, after conceding some ground through negotiation, she will obtain an acceptable settlement. Nevertheless, the court finds the amount requested in settlement negotiations useful as a somewhat high estimate of the damages sought by the plaintiff. However, under the terms of Black's fee agreement with her attorneys, the attorneys would receive 50 % of any settlement. Thus the offers made by Black's attorneys contemplated a damages award of between $ 23,000 and $ 60,000 for Black.

Black contends that the court should attach a monetary value greater than $ 5,000 to her success for a number of reasons. First, the offer of judgment was exclusive of reasonable attorneys' fees and costs. This provision clearly adds to the value of the settlement. As mentioned above, under the fee agreement entered into between Black and her attorneys, her attorneys would have been entitled to 50 % of any settlement as their fee. Thus, the

court will estimate the value to Black of the attorneys' fees provision in the settlement agreement at half of $ 5,000, or $ 2,500. Additionally, Black contends that, because she is poor, the $ 5,000 was extremely valuable to her and allowed her to quit her job at M.G.A. and move her family to Atlanta, Georgia. Finally, Black argues that the judgment is more valuable than $ 5,000 because it constitutes a public admission that M.G.A. discriminated against her. The judgment is likely valuable to Black personally as vindication or confirmation that she suffered discrimination. However, it is difficult to assess the monetary value of such an attainment. Furthermore, while a public admission of wrongdoing may be of value in that it vindicates the plaintiff in the public eye, exposes the defendant's wrongdoing, and embarrasses the defendant, the judgment in this case is likely not large enough to have such value. Given the size of the judgment and M.G.A.'s financial resources as a large video-retailing corporation, observers likely will interpret it as a nuisance settlement rather than an acceptance of responsibility for illegal discrimination. In short, based on comparison of the amount Black sought and the amount she obtained, the court concludes that Black's success was partial at best.

The other factors suggested by Justice O'Connor do not alter the court's assessment of Black's level of success. As noted above, Justice O'Connor suggests that the court consider the significance of the legal issue upon which the plaintiff prevailed. This consideration aids assessment of a plaintiff's success where the plaintiff has lost some claims but won others. Here, due to the entry of judgment as to all claims, Black prevailed on all legal issues before the court. Thus, this consideration does not alter the court's analysis in this case.

The court must also consider whether the litigation advanced a 'public goal.' Blacks argues that the litigation advanced the public interest because M.G.A. was

forced to admit through the discovery process that it had no African–Americans in upper-level management. However, Black has adduced no evidence that M.G.A. has made any changes as a result of this admission or that any public pressure has been brought to bear on M.G.A. as a result. Thus, there is no evidence of any specific public gain from the litigation.

Finally, Black strenuously argues that the failure to settle the case until after significant hours of attorney time had been spent was in large part due to the intransigence of M.G.A. and that accordingly, she should not be penalized for the relatively large number of hours spent obtaining the $ 5,000 judgment. The record reveals that Black opened with an offer to settle for $ 46,000 before filing suit, a figure which included fees and expenses.[4] M.G.A. made no counteroffer, but instead tried to convince Black not to file suit.[5] Eight months later, on September 14, 1998, Black again tried to settle the matter, by demanding two years of front pay, two years of back pay, damages, fees and costs.[6] According to Black, M.G.A. did not respond. On October 20, 1998, the parties met for the court-ordered settlement conference. Although Black was willing to mediate, M.G.A. refused to consider mediation at that time and made its first offer to settle both claims. M.G.A. claims that it offered $ 4,600, while Black contends that M.G.A. offered only $ 2,500, including fees and expenses. Black rejected the offer. Six days later, Black made a counteroffer of $ 120,000 including attorneys' fees and expenses. M.G.A. made no counteroffer. On January 5, 1999, the court held the pretrial conference. This court suggested that the parties consider court mediation. According to Reiss, M.G.A.'s attorney refused to consider court mediation and

would submit only to private mediation.[7] On January 21, 1999, Black accepted M.G.A.'s offer of judgment. The court finds that, although Black clearly could have done more to reach settlement, M.G.A.'s unwillingness or hesitancy to negotiate contributed to the length of time it took to settle the case. Accordingly, the court will consider M.G.A.'s responsibility for the size of the fee in judging the reasonableness of the fees sought.

The court finds that Black attained only partial success and that the attorneys' fees should be reduced accordingly. Black obtained a judgment equivalent in amount to backpay plus some damages, but obtained only a fraction of the damages she sought. She did not obtain a declaratory judgment or an injunction, and has presented no evidence that her lawsuit was the catalyst for any actions benefitting the public. Accordingly, the court will reduce her attorneys' fee award by 66 %, and will award the following:

| | | | | |
|---|---|---|---|---|
| Reiss: | 187.57 × | $ 135 × 34 % = | $ | 8,609.46 |
| Radwin: | 84.38 × | 110 × 34 % = | | 3,155.81 |
| Quinn: | 8.50 × | 190 × 34 % = | | 549.10 |
| Mattison: | 15.30 × | 180 × 34 % = | | 936.36 |
| Calamusa: | 0.75 × | 140 × 34 % = | | 35.70 |
| TOTAL | | | $ | 13,286.43 |

#### 4. Paralegal Hours

Black seeks compensation for 31.23 hours of paralegal services at $ 65.00 per hour. A prevailing party may be compensated for work done by law clerks or paralegals only to the extent that such work is "traditionally done by an attorney." *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982).[8]

M.G.A. raises the following specific objections to the billed paralegal services:

• M.G.A. objects to the 7/20/98 billing entry of 2.0 hours for organizing plead-

**4.** Plaintiff's Response Brief in Support of her Motion for Attorneys' Fees and Expenses, filed April 2, 1999, exhibit A.

**5.** *Id.*, exhibit B.

**6.** *Id.*, exhibit C.

**7.** *Id.*, exhibit D.

**8.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.

ings and correspondence, going through documents produced pursuant to discovery to determine which were responsive to the discovery request, and organizing "other documents." Organizing pleadings, correspondence, and unspecified documents is clerical work. However, analyzing whether documents are responsive to discovery requests is work traditionally done by an attorney. Because the billing records do not indicate the breakdown in time between the different tasks, the court must guess the amount of time spent on compensable activity. The court therefore will reduce this entry by two thirds or 1.33 hours.

● M.G.A. objects to the 10/27/98 entry of 0.35 hours for an office conference with Reiss regarding what would be appendices and exhibits to the brief in response to the defendant's motion for summary judgment and the 10/28/98 entry of 2.5 hours for "organizing exhibits to Summary Judgment Response." Organizing exhibits for a brief arguably is work traditionally done by an attorney. The conference in which the paralegal received instructions in preparation for doing so is therefore billable as well.

● M.G.A. objects to an entry on 10/29/98 of 5.0 hours for proofing the brief, drafting a list of exhibits, putting together evidentiary submissions, copying, and making corrections to and finalizing a motion. Black now seeks only three of the previously requested five hours. She contends that at least half of five hours was spent organizing and analyzing evidentiary submissions. While proofing the brief, drafting a list of exhibits, and putting together evidentiary submissions arguably constitute traditional attorneys' work, the copying, making corrections to, and finalizing a motion are clerical or secretarial work. The court estimates that approximately three hours are billable and will reduce the 10/29/98 entry by 2.0 hours.

● M.G.A. objects to the portion of the 12/2/98 entry for updating loose pleadings and correspondence in the file because it is clerical work. Black concedes this and seeks to reduce her billing from 2.5 to 1.5 hours. In the remaining time, the paralegal finished drafting the exhibit and witness list and drafted portions of the pretrial order. These tasks are billable as traditional attorney's work, and the court finds that the time spent on these tasks is reasonable. Therefore, the court will reduce the 12/2/98 entry by 1.0 hour.

● M.G.A. objects to the 2/9/99 entry of 2.0 hours spent in a conference regarding copying documents to send to attorneys doing affidavits in support of the attorneys' fee motion, pulling documents, copying them, and making packets to be sent out. This is clerical work. The court will disallow the 2.0 hours.

The court has reviewed Black's submission of additional fees and costs subsequent to filing her motion for fees and costs. The court will disallow the entry of 3/19/99 of 0.5 hours for updating loose pleadings and pleading notebooks as this is secretarial work rather than the type of work traditionally done by an attorney. Black waives her initial request for time for the dates of 7/28/98 (0.42 hours) and 9/9/98 (0.50 hours). In sum, the court will reduce the bill for paralegal services by 7.75 hours, leaving 23.48 (31.23 − 7.75) compensable hours.

Black seeks $65 per hour for paralegal's work. M.G.A. does not object to this rate of compensation. Furthermore, the court has awarded similar rates of pay for paralegal work in prior cases. *See, e.g., White,* 1998 WL 60938 at *12 ($ 60 per hour awarded for paralegal work); *Reynolds,* 926 F.Supp. at 1459 ($ 65 an hour awarded for paralegal work); *Coleman,* 911 F.Supp. at 517 ($50 to $70 an hour awarded for paralegal work).

Finally, as discussed above, because of Black's limited success, the paralegal work award is reduced by 66 %, and is as follows:

23.48 hours × $ 65 × 34 % = $ 518.91

5. Expenses

 Black seeks $ 5,225.19 for expenses incurred in connection with this litigation. With the exception of overhead office expenses normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case, may be taxed as costs; the standard of reasonableness is to be given a liberal interpretation. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983).

M.G.A. raises two objections to the expenses requested by Black's attorneys. First, M.G.A. contends that Black has not sufficiently explained the copying expenses. Black contends that the majority of the copies were of the brief in opposition to summary judgment, deposition excerpts, and personnel files utilized as evidence, and that the other copies were either case-law duplications, copies of exhibits for use in preparation for and during depositions, or copies of materials for supporting affidavits. In the court's experience, most attorneys do not keep detailed records of the purpose of every copy made. The court finds the explanation provided by Black's attorneys sufficient. The objection is overruled.

Second, M.G.A. argues that the cost charged per copy, 20 ¢, is excessive given that copying is available at Kinko's for 7 ¢ per page. Given the liberal standard of reasonableness applicable to expense determinations under § 1988, Black's attorneys are not required to go outside their offices to do their myriad copying tasks in order to save money, nor are they limited to charging the cheapest price they could obtain if they went outside their office to make copies. Moreover, in the court's experience, 20 ¢ per copy is well within the range of prices per copy billed by local attorneys. The court overrules this objection. However, for the reasons discussed above, the court will reduce the billable expenses by 66 %, and will award the following:

$ 5,225.19 × 34 % = $ 1,776.56

Accordingly, for the above reasons, it is ORDERED that the motion for attorneys' fees and expenses, filed by plaintiff Jacqueline Black on February 19, 1999, and amended on April 2, 1999, is granted and that plaintiff Black recover from defendant M.G.A., Inc., the sum of $ 13,286.43 for attorneys' fees, $ 518.91 for paralegal work, and $ 1,776.56 for expenses, for a total of $ 15,581.90.